KAREN P. HEWITT
United States Attorney
DOUGLAS KEEHN
Assistant U.S. Attorney
California Bar. No. 233686
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6549

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN DIEGO EMILIANO-LOYA,<br><br>Defendant. | Criminal Case No. 08CR2124-IEG<br><br>DATE: August 15, 2008<br>TIME: 9:00 a.m.<br>COURT: The Hon. Irma E. Gonzalez<br><br>GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:<br><br>(1) COMPEL DISCOVERY AND PRESERVE EVIDENCE; AND<br>(2) LEAVE TO FILE FURTHER MOTIONS.<br><br>TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES. |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel KAREN P. HEWITT, United States Attorney, and DOUGLAS KEEHN, Assistant U.S. Attorney, and hereby files its Response and Opposition to the motions filed on behalf of defendant JUAN DIEGO EMILIA NO-LOYA ("Defendant") which is based upon the files and records of this case.

//

//

//

//

//

//

# I

# STATEMENT OF THE CASE

On June 25, 2008, an Indictment was returned in the Southern District of California charging Defendant Juan Diego Emiliano-Loya ("Defendant") with being an alien found in the United States after deportation, in violation of 8 U.S.C. § 1326(a) and (b). On August 4, 2008, the Court arraigned Defendant on the Indictment and Defendant entered a "not guilty" plea. The Court scheduled a motion hearing date for August 4, 2008. In advance of the hearing Defendant indicated to the Government that he would seek a continuance on that date. At the hearing on August 4, 2008, Defendant requested a trial date. The Court scheduled a trial date for September 3, 2008.

# II

# STATEMENT OF FACTS

## A. The Offense

On June 4, 2008, at approximately 7:45 p.m., Border Patrol Agent (BPA) Michael Donnelly was conducting line watch duties in Andrade, California. BPA Donnelly observed a van pass his location, and noted that the driver was intent, looking forward, while the passenger appeared to be speaking to someone in the cargo area. The vehicle was traveling below the posted speed limit, then slowed further as it approached BPA Donnelly. BPA Donnelly followed the vehicle in an attempt to run a registration check. The vehicle then exited at Andrade Road and continued south toward the Andrade Port of Entry and the international border. About one quarter-mile north of the Port of Entry the van pulled over and the driver, later identified as Defendant Juan Diego Emiliano-Loya, and the passenger fled the vehicle. BPA Donnelly activated his lights, identified himself as a federal agent and directed suspects back to the van for an immigration check. Both suspects complied. Defendant claimed he was a United States citizen and provided an Arizona identification in the name of "Juan D-E Loya." This identification came back with multiple aliases and social security numbers. One alias, Hector David Quevado, with the same date of birth as stated on Defendant's Arizona identification, had been previously removed. Moreover, the name Juan Emiliano-Loya matched a lengthy criminal history including crimes of violence. BPA

Donnelly further confirmed Defendant's identification by positively comparing Defendant's tattoos to those associated with these names and aliases.

BPA Donnelly took Defendant to Andrade Port of Entry for fingerprint identification but Defendant refused to comply. BPA Donnelly placed Defendant under arrest and advised him of his rights pursuant to Miranda. BPA Donnelly then transported Defendant to Yuma Station for booking and processing. Defendant forcibly resisted fingerprinting. Several Agents were required to assist in obtaining Defendant's fingerprints. After the Agents obtained a couple of Defendant's prints Defendant then permitted the remainder of his prints, and his booking photo, to be taken. Law enforcement databases returned a positive match for Defendant's identity, criminal and immigration history.

**B. Defendant's Statement**

After arrest, Defendant invoked his rights pursuant to Miranda and all questioning ceased.

**C. Defendant's Immigration and Criminal History**

Defendant has been deported twice and was most recently removed in 2006. In or around 1990 Defendant sustained a felony conviction for Larceny and was sentenced to three years in prison; in 1993 Defendant sustained a felony conviction for Aggravated Assault Against an Officer and was sentenced to a further five years in prison; in 2003 Defendant sustained a conviction for Trespass and was sentenced to 15 days in custody; in 2004 Defendant sustained a conviction for Assault Causing Injury and was sentenced to 120 days in custody; in this year, 2008, Defendant sustained a conviction for Shoplifting and was sentenced to six months in custody.

## III

## UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES

**A. Motions to Compel Specific Discovery and Preserve Evidence**

The Government has provided Defendant with 230 pages of discovery including the complaint and statement of facts, reports from the apprehending agents, the defendant's prior conviction documents, as well as a tape of Defendant's prior deportation hearing..

With respect to Defendant's discovery motions, the Constitution requires the Government to preserve evidence "that might be expected to play a significant role in the suspect's defense."

California v. Trombetta, 467 U.S. 479, 488 (1984). To require preservation by the Government, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489; see also Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001). The Government will make every effort to preserve evidence it deems to be relevant and material to this case. Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the Government that results in actual prejudice to the Defendant. See Illinois v. Fisher, 540 U.S. 544 (2004) (per curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

**(1) Defendant's Statements**

The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The Government has produced all of the Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The Government has no objection to the preservation of the handwritten notes taken by any of the agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses).

However, the Government objects to providing Defendant with a copy of the rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18

U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

**(2) Arrest reports and notes**

The Government has provided Defendant with all known reports related to Defendant's arrest in this case that are available at this time. The Government will continue to comply with its obligation to provide to Defendant all reports subject to Rule 16. As previously noted, the Government has no objection to the preservation of the agents' handwritten notes, but objects to providing Defendant with a copy of the rough notes at this time because the notes are not subject to disclosure under Rule 16, the Jencks Act, or Brady. In addition, the United States has already discovered a copy of the Report of Investigation for Defendant's case.

**(3) Brady Material**

The Government has and will continue to perform its duty under Brady to disclose material exculpatory information or evidence favorable to Defendant when such evidence is material to guilt or punishment. The Government recognizes that its obligation under Brady covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the Government. See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not

requested by the defense. Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976). “Evidence is material, and must be disclosed (pursuant to Brady), ‘if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.’” Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc). The final determination of materiality is based on the “suppressed evidence considered collectively, not item by item.” Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

Brady does not, however, mandate that the Government open all of its files for discovery. See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000)(per curiam). Under Brady, the Government is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380, 389-90 (9th Cir. 1999), amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over. (See United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001)). Nor does Brady require the Government “to create exculpatory evidence that does not exist,” United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government “supply a defendant with exculpatory information of which it is aware.” United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976). 1988) (“No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value.”). Accordingly, Defendant’s demand for this information is premature.

**(4) Information That May Result in a Lower Sentence Under the Guidelines**

The Government has provided and will continue to provide the defendants with all Brady material that may result in mitigation of Defendant’s sentence. Nevertheless, the Government is not required to provide information bearing on Defendant’s sentence until after Defendant’s conviction or guilty plea and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) (no Brady violation occurs "if the evidence is disclosed to the defendants at a time when the disclosure remains in value").

**(5) Defendant's Prior Record**

The Government has already provided Defendant with a copy of any criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(D).

**(6) Proposed 404(b) (and 609) Evidence**

Should the Government seek to introduce any "similar act" evidence pursuant to Federal Rules of Evidence 404(b) or 609(b), the Government will provide Defendant with notice of its proposed use of such evidence and information about such bad act at or before the time the Governments' trial memorandum is filed. The Government reserves the right to introduce as prior act evidence any conviction, arrest or prior act that is disclosed to the defense in discovery.

**(7) Evidence Seized**

The Government has complied and will continue to comply with Rule 16(a)(1)(c) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the Government, and which is material to the preparation of Defendant's defense or are intended for use by the Government as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs. The Government, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

**(8) Request for Preservation of Evidence**

After issuance of a an order from the Court, the Government will preserve all evidence to which Defendant is entitled to pursuant to the relevant discovery rules. However, the United States objects to Defendant's blanket request to preserve all physical evidence. The United States has complied and will continue to comply with Rule 16(a)(1)(c) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs. The United States has made the evidence available to Defendant and Defendant's investigators and will comply with any request for inspection.

**(9) Henthorn Material**

The Government will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the Government intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002)(citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

**(10) Tangible Objects**

The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy any tangible objects seized that are within its possession, custody, or control, and that are either material to the preparation of Defendant's defense, or are intended for use by the Government as evidence during its case-in-chief at trial, or were obtained from or belong to Defendant. The Government need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**(11) Expert Witnesses**

The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. This summary shall include expert witnesses' qualifications, expert witnesses' opinions, and the bases and reasons for those opinions.

**(12) Evidence of Bias or Motive To Lie**

The Government is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The Government is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(13) Impeachment Evidence**

The Government recognizes its obligation under Brady and Giglio to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie.

**(14) Evidence of Criminal Investigation of Any Government Witness**

Defendants are not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. "[T]he criminal records of such [Government] witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(c) to supply a defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the Government intends to call in its case-in-chief. When disclosing such information, disclosure need only extend to witnesses the Government intends to call in its case-in chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

**(15) Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth-Telling**

The Government is unaware of any evidence indicating that a prospective witness has a problem with perception, recollection, communication, or truth-telling. The Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection or ability to communicate. The Government objects to providing any evidence that a witness has ever used narcotics or other controlled substances, or has ever been an alcoholic

because such information is not discoverable under Rule 16, Brady, Giglio, Henthorn, or any other Constitutional or statutory disclosure provision.

**(16) Jencks Act Material**

The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). While the Government is only required to produce all Jencks Act material after the witness testifies, the Government plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

**(17) Giglio Information**

As stated previously, the Government will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

**(18) Agreements Between the Government and Witnesses**

An agreement that the Government makes with a witness for testimony in exchange for money or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure as impeachment evidence under Brady and Giglio. See United States v. Kojayan, 8 F.3d 1315, 1322-23 (9th Cir. 1993); Benn v. Lambert, 238 F.3d 1040, 1054-60 (9th Cir. 2002). As stated above, the Government will provide any Giglio information in connection with this case no later than two weeks prior to trial.

//

**(19) Informants and Cooperating Witnesses**

If the Government determines that there is a confidential informant who has information that is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," the Government will either disclose the identity of the informant or submit the informant's identity to the Court for an in-chambers inspection. See Roviaro v. United States, 353 U.S. 53, 60- 61 (1957); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997).

**(20) Informants and Cooperating Witnesses**

If the Government determines that there is a confidential informant who has information that is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," the Government will either disclose the identity of the informant or submit the informant's identity to the Court for an in-chambers inspection. See Roviaro v. United States, 353 U.S. 53, 60- 61 (1957); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997).

**(21) A-File**

The Government will produce documentation regarding any removals and/or proceedings that the Government intends to introduce at trial. Additionally, the Government does not object to setting up a viewing of the discoverable portion of Defendant's A-file at a time that is mutually convenient for the parties. However, the Government objects to providing the defendant with the entire A-file as Defendant has requested in his motion because the A-file contains attorney work product and other information that is not discoverable. Moreover, this information is equally available to Defendant through a Freedom of Information Act request. Even if Defendant could not ascertain the A-File through such a request, the A-File is not Rule 16 discoverable information. The A-File contains information that is not discoverable like internal government documents and witness statements. See Fed. R. Crim. P. 16(a)(2). Witness statements would not be subject to production until after the witness for the Government testifies and provided that a "motion" is made by Defendant. See Fed. R. Crim. P. 16(a)(2) and 26.2. Thus, the A-File associated with Defendant need not be disclosed. The Government has produced and will continue to produce documents it intends to use in its case-in-chief. Evidence is material under Brady only if there is a reasonable probability that had it been disclosed to the defense, the result of the proceeding

would have been different. See United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001). However, Defendant has not shown how documents in the A-File are material. Finally, Defendant does not own the A-File. It is an agency record. See United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997) (noting that A-File documents are admissible as public records).

**(22) Residual Request**

The Government will comply with all of its discovery obligations, but objects to the broad and unspecified nature of Defendant's residual discovery request.

**III**

**MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

The Government does not object to the granting of leave to file further motions as long as such leave applies to both parties and further motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue.

**IV**

**CONCLUSION**

For the above stated reasons, the Government respectfully requests that Defendant's motions be denied.

DATED: August 11, 2008.

Respectfully Submitted,
KAREN P. HEWITT
United States Attorney

s/ Douglas Keehn
DOUGLAS KEEHN
Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JUAN DIEGO EMILIANO-LOYA,<br>Defendant. | ) | Case No. 08CR2124-IEG<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, DOUGLAS KEEHN, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Response and Opposition to Defendant's Motions on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

John Ellis, Esq.
Federal Defenders of San Diego, Inc.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 11, 2008.

s/ Douglas Keehn
DOUGLAS KEEHN