**JOHN C. ELLIS, JR.**
California State Bar No. 228083
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: john_ellis@fd.org

Attorneys for Juan Diego Emiliano Loya

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE IRMA E. GONZALEZ)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>**JUAN DIEGO EMILIANO LOYA**,<br><br>Defendant. | ) | Case No.: 08cr2124-IEG<br><br>Date: September 2, 2008<br>Time: 2:00 p.m.<br><br>**NOTICE OF MOTIONS AND MOTIONS TO:**<br><br>**(1) DISMISS THE INDICTMENT DUE TO COLLATERAL ESTOPPEL;**<br>**(2) DISMISS THE INDICTMENT BECAUSE IT FAILS TO STATE AN OFFENSE;**<br>**(3) DISMISS THE INDICTMENT BECAUSE IT VIOLATES MR. LOYA'S RIGHT TO PRESENTMENT;**<br>**(4) DISMISS THE INDICTMENT DUE TO MISINSTRUCTION OF GRAND JURY;**<br>**(5) DISMISS THE INDICTMENT DUE TO RACIALLY MOTIVATED INVESTIGATION;**<br>**(6) STRIKE SURPLUSAGE FROM INDICTMENT;**<br>**(7) PRODUCE GRAND JURY TRANSCRIPTS;**<br>**(8) SUPPRESS EVIDENCE SEIZED IN VIOLATION OF FOURTH AMENDMENT;**<br>**(9) SUPPRESS STATEMENTS; AND**<br>**(10) LEAVE TO FILE FURTHER MOTIONS.** |

TO: KAREN P. HEWITT, UNITED STATES ATTORNEY; AND
DOUGLAS KEEHN, ASSISTANT UNITED STATES ATTORNEY:

**PLEASE TAKE NOTICE** that on September 2, 2008, at 2:00 p.m., or as soon thereafter as counsel may be heard, the accused, Juan Diego Emiliano Loya , by and through his attorneys, John C. Ellis, Jr. and

Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the motions outlined below.

**MOTIONS**

Defendant, Mr. Loya, by and through his attorneys, John C. Ellis, Jr. and Federal Defenders of San Diego, Inc., pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law and local rules, hereby moves this Court for an order to:

(1) Dismiss the Indictment Due to Collateral Estoppel;
(2) Dismiss the Indictment Because it Fails to State an Offense;
(3) Dismiss the Indictment Because it Violates Mr. Loya's Right to Presentment;
(4) Dismiss the Indictment Due to Misinstruction of Grand Jury;
(5) Dismiss the Indictment Due to Racially Motivated Investigation;
(6) Strike Surplusage from Indictment;
(7) Produce Grand Jury Transcripts;
(8) Suppress Evidence Seized in Violation of Fourth Amendment;
(9) Suppress Statements; and
(10) Leave to File Further Motions.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, and any and all other materials that may come to this Court's attention at or before the time of the hearing on these motions.

Respectfully submitted,

Dated: August 18, 2008

*/s/ John C. Ellis, Jr.*
**JOHN C. ELLIS, JR.**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Loya
john_ellis@fd.org

**JOHN C. ELLIS, JR.**
California State Bar No. 228083
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: john_ellis@fd.org

Attorneys for Juan Diego Emiliano Loya

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE IRMA E. GONZALEZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JUAN DIEGO EMILIANO LOYA,<br>Defendant. | Case No. 08CR2124-IEG<br><br>DATE: September 2, 2008<br>TIME: 2:00 p.m.<br><br>STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS |

**I.**

**STATEMENT OF FACTS**

The facts contained herein are based, in part, on materials received from the government. Mr. Loya does not accept these facts as his own, and reserves the right to take a contrary position at motion hearings and trial. The facts alleged in these motions are subject to amplification and/or modification at the time these motions are heard.

On the evening of June 4, 2008, Border Patrol Agent Michael Donnelly was assigned to line watch duties in Andrade, California. See Exhibit A (Relevant portions of Agent Donnelly's Report of Investigation). At approximately 7:40 p.m., Agent Donnelly, while observing traffic on Interstate 8, saw a van pass his location. Agent Donnelly "could see the driver staring forward with both hands on the steering wheel, in an attempt to avoid being noticed. From [Officer Donnelly's] experience this type of behavior is not consistent with that of the general public--[...who] seem[] to show a level of curiosity when they see a marked law

enforcement vehicle or personnel." Exhibit A, p. 1. Additionally, Agent Donnelly saw the passenger looking into the cargo area of the van "as if speaking with someone in the back." Id. Agent Donnelly further noticed that the van appeared to be traveling under the posted speed limit, and slowed further as it passed Agent Donnelly's location. Id.

Agent Donnelly began his pursuit of the van. He was attempting to "run [the] registration." Id. The van exited Interstate-8 on Andrade Road. Id. The van was traveling south, towards the Andrade Port of Entry. Id. By the time Agent Donnelly reached the van, it was about a quarter of a mile from the port of entry. Id. The van had Arizona license plates. Id. at p. 2. The van parked, and the driver and passenger quickly exited the van. Id. at p. 1. Agent Donnelly responded by activating the overhead lights on his vehicle. Id. at p. 2. He identified himself as a Border Patrol Agent, and "ordered both occupants to get back into the vehicle." Id. When Agent Donnelly looked into the van, he noticed that there was a third person still sitting in the van. Id.

Agent Donnelly asked all three people if they were United States citizens; the driver, allegedly identified as Mr. Loya, answered that he was a United States citizen. Id. The driver presented Agent Donnelly with an Arizona identification card bearing the name Juan D-E Loya. Id. Agent Donnelly ran a wants/warrants and immigration history check on the driver. Id. According to Agent Donnelly, he was informed that the name Juan D-E Loya returned with multiple aliases and social security numbers, one of which was associated with a person who had previously been deported from the United States. Id. Based on this information, Mr. Loya was arrested, and brought to several border patrol stations for processing. Id.

These motions follow.

## II.

## DISMISS THE INDICTMENT BECAUSE COLLATERAL ESTOPPEL BARS THE GOVERNMENT FROM RE-CHARGING MR. LOYA WITH ILLEGAL REENTRY

The government is collaterally estopped from charging Mr. Loya with a violation of 8 U.S.C. § 1326. Collateral estoppel means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970) (emphasis added). Collateral estoppel is a principle of the Double

Jeopardy Clause. See id. As the Ninth Circuit explained, "The Double Jeopardy Clause requires the government to put on its strongest case the first time; it forbids it to conduct a series of prosecutions, involving the same fundamental issues, in which it presents additional arguments and evidence at each iteration." United States v. Castillo-Basa, 483 F.3d 890 (9th Cir. 2007).

The Ninth Circuit recently addressed the application of collateral estoppel to successive prosecutions arising out of an illegal reentry case. In Castillo-Basa, the government charged the defendant with a violation of 8 U.S.C. § 1326. Id. at 893. During the trial, the defendant testified that he had never seen an immigration judge. Id. The government was unable to locate an audio recording of this proceeding during the trial, and Mr. Castillo-Basa was acquitted. Id. After the trial, the government located the audio recording, and charged Mr. Castillo-Basa with perjury. Id. The basis of the perjury charge was that the recently found audio recording established that Mr. Castillo-Basa lied when he testified that he had never been deported.

Mr. Castillo-Basa challenged the government's successive prosecution based on collateral estoppel grounds. The Ninth Circuit determined: "The Double Jeopardy does not only bar a second prosecution on the same charge of which a defendant has been previously acquitted (or convicted). It also prevents the government from seeking to prosecute a defendant on an issue that has been determined in a prior prosecution, regardless of the particular offense involved in the earlier trial." Id. at 897 (citing Ashe, 397 U.S. at 443).

The Castillo-Basa Court identified a three-step process when determining whether collateral estoppel bars a successive prosecution.

> (1) An identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine;
>
> (2) [A]n examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and
>
> (3) [A]n examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

Id. at 897 (citations omitted).

In this case, the government already had an opportunity to prove that Mr. Loya is an alien, who was deported, and then returned to the United States without permission. On August 16, 2006, a one-count

indictment was filed in United States District Court of New Mexico charging Mr. Loya with a violation of 8 U.S.C. §§ 1326(a)(1) and (2) and (b)(2). See Exhibit B. The indictment specifically indicates that Mr. Loya was deported, excluded, and removed and departed the United States on or about April 25, 2002. See id. On the eve of trial, the government's motion to dismiss these charges with prejudice was granted. See Exhibit C.

**A. The Issues of Alienage and The April 2002 Deportation Sufficiently Similar and Material.**

The charges listed in the 2006 indictment are almost identical to the charges in the current case.[1] In fact, although the government has provided defense counsel with evidence of the April 25, 2002 deportation, it has not provided evidence of a subsequent deportation. The only facially material differences between the information contained in the two indictments is the location where Mr. Loya was found and the date. These differences are of no moment, however, because the charge of being found in the United States is a continuing offense. See United States v. Jimenez-Borja, 378 F.3d 853 (9th Cir. 2004) (concluding that "the finding of an illegal alien is significant for purposes of the statute of limitations, determining the applicable sentencing guidelines, and for venue. However, when the issue is whether or not the defendant was found in this country on a particular day, it does not matter who found him. What matters is that he was found on that date.") Thus, the fact that the location and the alleged date of being found in the United States are different between the two indictments is not legally significant.

**B. The Issue Of Alienage Was Previously Litigated.**

On the eve of the first trial, the government moved to dismiss the indictment with prejudice. According to the government's motion, it was moving to dismiss the indictment with prejudice based on the Court's rulings on Mr. Loya's Second [Exhibit D] and Third [Exhibit E] Motions in Limine prohibiting the government from introducing certain evidence. See Exhibit C. The issue litigated in the Third Motion In Limine was evidence of alienage. See Exhibit D and E. Thus the issue of alienage was litigated in the prior case.

---

[1] The current indictment simply indicates that Mr. Loya was "removed from the United States subsequent to November 9, 1998" whereas the 2006 indictment indicated a removal date of April 25, 2002. Clearly April 25, 2002 is subsequent to November 9, 1998.

**C. The Issue of Alienage Was Previously Decided.**

In its motion, the government clearly indicates that it was moving to dismiss the indictment with prejudice based on the district court's rulings. Based on the government's motion, the Court dismissed the indictment with prejudice. Exhibit F. These rulings relate to the introduction of evidence on alienage. Accordingly, the issue of alienage was previously decided.

**D. Conclusion.**

The 2006 indictment was dismissed with prejudice by the government. One of the issues litigated therein was alienage. Alienage is an issue in this case. Accordingly, the government may not re-prosecute Mr. Loya for those same charges. The charges in the dismissed 2006 indictment and the charges in the current indictment are not materially different. Therefore, the government must be collaterally estopped from bringing these charges, and this indictment must be dismissed.

**III.**

**DISMISS THE INDICTMENT BECAUSE IT FAILS TO STATE AN OFFENSE**

The indictment must be dismissed because it fails to state an offense. The Fifth Amendment requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .." Consistent with this Constitutional requirement, the Supreme Court has held that an indictment must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." United States v. Carll, 105 U.S. 611, 612-13 (1881) (emphasis added). It is black letter law that an indictment that does not allege an element of an offense, even an implied element, is defective, and should be dismissed. See, e.g., Russell v. United States, 369 U.S. 749, 769-72 (1962); Stirone v. United States, 361 U.S. 212, 218-19 (1960); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999); United States v. Keith, 605 F.2d 462, 464 (9th Cir. 1979). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." United States v. Boren, 278 F.3d 911, 914(9th Cir. 2002)

In this case, the indictment purports to charge a violation of Title 8, United States Code, Sections 1326(a) and (b). In United States v. Salazar-Lopez, 506 F.3d 748, 751 (9th Cir. 2007), the Ninth Circuit indicated that to be sufficient, an indictment charging a violation of section 1326(b) must allege either that

the defendant has been previously removed subsequent to a conviction (*i.e.*, for a misdemeanor, a felony, an aggravated felony, or a crime of violence), or it must allege a specific date of the prior removal. In this case, the indictment only alleges that Mr. Loya "was removed from the United States subsequent to November 9, 1998." The indictment does not allege either that this "removal" occurred subsequent to a conviction nor does it allege a specific date of the prior removal. Accordingly, the indictment does not allege all elements of section 1326(b). Therefore, the indictment should be dismissed.

**IV.**

**<u>DISMISS THE INDICTMENT BECAUSE IT VIOLATES MR. LOYA'S RIGHT TO PRESENTMENT</u>**

The criminally accused have a Fifth Amendment right to have a grand jury pass upon those facts necessary to convict him or her at trial. In this case, the government included the following language in the indictment: "It is further alleged that defendant JUAN DIEGO EMILIANO-LOYA T/N, aka Hector David Quevedo, was removed from the United States subsequent to November 9, 1998."[2] The indictment in this case violates Mr. Loya's right to presentment in two ways. First, the language added by the government does not ensure that the grand jury actually found probable cause that Mr. Loya was deported after November 9, 1998, as opposed to simply being physically removed from the United States. Second, that the grand jury found probable cause to believe that Mr. Loya was removed "subsequent to November 9, 1998" does not address the possibility that the government may at trial rely on a deportation that was never presented to, or considered by, the grand jury.

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V. The Sixth Amendment provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be

---

[2] Presumably, the government added this language in an attempt to comply with the Ninth Circuit's decision in <u>United States v. Covian-Sandoval</u>, 462 F.3d 1090 (9th Cir. 2006). In <u>Covian-Sandoval</u>, the Ninth Circuit held that it is an <u>Apprendi</u> violation for a court to increase a person's statutory maximum under 8 U.S.C. § 1326(b) via a court-finding that a person had been removed from the United States <u>following</u> a conviction. As indicated above, however, this language does not cure the problems with this indictment. Should sentencing become necessary, Mr. Loya will file further briefing on this issue.

informed of the nature and cause of the accusation . . ..." U.S. Const. Amend. VI. Thus, a defendant has a constitutional right to have the charges against him presented to a grand jury and to be informed of the grand jury's findings via indictment. See Russell v. United States, 369 U.S. 749, 763 (1962) (An indictment must "contain[] the elements of the offense intended to be charged, and sufficiently apprise[] the defendant of what he must be prepared to meet.").

To be sufficient, an indictment must allege every element of the charged offense. See United States v. Morrison, 536 F.2d 286, 287 (9th Cir. 1976) (citing United States v. Debrow, 346 U.S. 374 (1953)). Indeed, in order to be sufficient, an indictment must include implied elements not present in the statutory language. See Du Bo, 186 F.3d at 1179. "If an element is necessary to convict, it is also necessary to indict, because elements of a crime do not change as criminal proceedings progress." United States v. Hill, 279 F.3d 731, 741 (9th Cir. 2002). An indictment's failure to "recite an essential element of the charged offense is not a minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment." Du Bo, 186 F.3d at 1179.

In the indictment, the government here has added the language, "It is further alleged that defendant JUAN DIEGO EMILIANO-LOYA T/N, aka Hector David Quevedo, was removed from the United States subsequent to November 9, 1998." There is no indication from this "allegation" that the grand jury was charged with the legal meaning of the word "removal" applicable in this context, as opposed to being simply removed from the United States in a colloquial sense. It is clear from Covian-Sandoval that in order to trigger the enhanced statutory maximum contained in section 1326(b), the government must prove that a person was removed—as that term is used in the immigration context—after having suffered a conviction. 462 F.3d at 1097-1098 (noting as part of its analysis that immigration proceedings have fewer procedural protections that criminal proceedings). A deportation has the following elements: "(1) that a deportation proceeding occurred as to [the] defendant and as a result, [(2)] a warrant of deportation was issued and [(3)] executed by the removal of the defendant from the United States." See United States v. Castillo-Basa, 483 F.3d 890 (9th Cir. 2007) (citing, without contesting, the elements of a deportation provided by the district court.) As this is the type of removal the government must prove before a petite jury, it is necessary that the government allege such a removal before the grand jury. As returned, however, there is no assurance from the face of the

indictment that the grand jury in this case was charged with the type of removal necessary to increase a person's statutory maximum under section 1326(b).

As such, there is no fair assurance that the grand jury will have passed upon those facts necessary to convict Mr. Loya. Additionally, as charged, there is no fair assurance that the indictment will contain those allegations the government will attempt to prove at trial. If the government alleged before the grand jury that Mr. Loya was removed (in a colloquial sense), but offers proof at trial that Mr. Loya was removed (in an immigration sense), there will be a constructive amendment of the indictment at trial. See Stirone v. United States, 361 U.S. 212, 217-19 (1960). Either scenario represents a violation of Mr. Loya's right to presentment. Stirone, 361 U.S. at 218-19.

A second problem with the indictment is that there is no indication which (if any) deportation the government presented to the grand jury. In most cases, the government will have a choice of deportations to present to the grand jury to support an allegation that a person had been deported after a specific date. This renders it a very real possibility that the government alleged one deportation to the grand jury to sustain its allegation that Mr. Loya was removed from the United States, but will attempt to prove at trial a wholly different deportation to sustain its trial proof. If this were to turn out to be the case, Mr. Loya's right to have the grand jury pass on all facts necessary to convict him would be violated. See Du Bo, 186 F.3d 1179.

## V.

## DISMISS THE INDICTMENT DUE TO MISINSTRUCTION OF THE GRAND JURY

The indictment in the instant case was returned by a panel of the January 2008 grand jury. To date, defense counsel has not received a transcript of any of the proceedings from this grand jury.[3] Based on past experience with the instructions given to the grand jury in this district, it is likely that the instructions to the impaneled grand jury deviate from the instructions at issue in the major Ninth Circuit cases challenging a form grand jury instruction previously given in this district in several ways.[4] First, instructing grand jurors

---

[3] Included herein, and incorporated by reference into this motion, is a motion requesting the release of transcripts from the impanelment of this grand jury.

[4] See, e.g., United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006); United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005) (Navarro-Vargas II); United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004)(Navarro-Vargas

that their singular duty is to determine whether or not probable cause exists and that they have no right to decline to indict when the probable cause standard is satisfied. Second, instructing grand jurors of a non-existent prosecutorial duty to present exculpatory evidence. These instructions would compound erroneous instructions to prospective grand jurors during *voir dire* of the grand jury panel, which immediately precedes the instructions. Therefore, the indictment should be dismissed.

## VI.

## THE COURT SHOULD DISMISS THE INDICTMENT DUE TO A RACIALLY MOTIVATED INVESTIGATION

The Equal Protection Clause prohibits "selective enforcement of the law based on considerations such as race." Whren v. United States, 517 U.S. 806, 813 (1996). Accordingly, as the Sixth Circuit has noted:

> If law enforcement adopts a policy, employs a practice, or in a given situation takes steps to initiate an investigation of a citizen based solely upon that citizen's race, without more, then a violation of the Equal Protection Clause has occurred.

United States v. Avery, 137 F.3d 343 (6th Cir.1997) (emphasis added).

An equal protection violation in the initiation of investigation is fatal to the indictment. United States v. Cuevas-Ceja, 58 F.Supp.2d 1175 (D.Or., 1999). If Mr. Loya was "targeted for investigation based solely on [his] race or ethnicity, the indictment returned against [him] is constitutionally flawed and must be dismissed." Id.

In this case, there is little doubt that Agent Donnelly's investigation was based on race. In his report, Agent Donnelly fails to identify any reasons for the basis of the detention of the individuals in the van. And, despite the fact that Mr. Loya claimed he was a United States citizen and presented a valid Arizona driver's license, Agent Donnelly called and requested an immigration check on Mr. Loya and the other two people in the van (both of whom have Hispanic surnames).[5] Therefore, unless the government establishes that the

---

I); United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002) (per curiam).

[5] Notably, in the suppression context, courts are precluded from considering race or ethnicity as a matter of law, and may not rely upon them in finding probable cause or reasonable suspicion. United States v. Montero-Camargo, 208 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc) ("Hispanic appearance is, in general, of such little probative value that it may not be considered as

investigation in this case was not initiated based solely on race, then the investigation leading to this indictment was violative of Mr. Loya's Fifth Amendment rights, and accordingly, the indictment should be dismissed.

In the alternative, the Court should suppress the fruits of the subsequent arrest and search under the exclusionary rule. See United States v. Navarro-Camacho, 186 F.3d 701-711 (6th Cir. 1999)(Moore, J. concurring). See also,infra. Section IX.

**VII.**

**MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT**

The above arguments to dismiss the indictment based on the government's failure to comply with Mr. Loya's Fifth and Sixth Amendment rights is premised on Covian-Sandoval having read into section 1326 an additional element—a deportation that occurred at a particular time—that the government must plead to the grand jury and prove to a jury. To the extent the government argues that Covian-Sandoval did not create an additional element, the indictment contains surplusage. In other words, if the government argues that the timing of a person's deportation is not a element of section 1326, but rather a sentencing factor under subsection (b) of section 1326, the indictment alleges a fact—the timing of a person's deportation—the Supreme Court has clearly held to be decided by a judge.

The Ninth Circuit has "repeatedly held that language [in an indictment] that describes elements beyond what is required under statute is surplusage and need not be proved at trial." Bargas v. Burns, 179 F.3d 1207, 1216 n. 6 (9th Cir. 1999). Surplusage in an indictment is subject to being struck at the request of the defendant. United States v. Fernandez, 388 F.3d 1199, 1220-21 (9th Cir. 2004). In this case, if the government argues that the date of a person's deportation is not a required element of section 1326, the indictment contains language beyond that which is necessary to convict Mr. Loya of violating section 1326. If the date of a person's deportation is not an element of section 1326, then the language in the indictment—"It is further alleged that defendant JUAN DIEGO EMILIANO-LOYA T/N, aka Hector David Quevedo, was

---

a relevant factor where particularized or individualized suspicion is required.") United States v. Montero-Camargo, 208 F.3d 1122, 1135 (9th Cir. 2000).

removed from the United States subsequent to November 9, 1998."—is surplusage. So too is the government's allegation in the indictment that Mr. Loya violated section 1326, subsection (b).

At one time, the Ninth Circuit considered subsection (b) of section 1326 a separate offense from subsection (a). See United States v. Corona-Sanchez, 291 F.3d 1201, 1203 (9th Cir. 2002) (*en banc*). This changed, however, following the Supreme Court's decision in Almendarez-Torres v. United States, 523 U.S. 224 (1998). See Corona-Sanchez, 291 F.3d at 1203. In Almendarez-Torres, the Supreme Court decided that subsection (b) of section 1326 described a sentencing provision, to be determined by a judge, rather than a substantive offense. See id. Following Almendarez-Torres, the Ninth Circuit rethought the way in which subsection (b) should be viewed, to the extent that indictments and judgements that reflect a violation of both subsection (a) and subsection (b) of section 1326 should have the reference to subsection (b) struck to "unambiguously reflect that the defendant was convicted of only one punishable offense pursuant . . .." Id.

Although an allegation of a particular date of deportation would likely be an appropriate response on the government's part to the holding of Covian-Sandoval, the government here has chosen to include in the indictment an allegation that goes solely towards an allegation under subsection (b) of section 1326. Indeed, the government has chosen to actually allege a violation of subsection (b) of section 1326 in the indictment. As Almendarez-Torres makes clear, however, Congress clearly intended findings under subsection (b) of section 1326 to be made by a judge, rather than a jury. Almendarez-Torres, 523 U.S. at 235 ("we believe that Congress intended to set forth a sentencing factor in subsection (b)(2) and not a separate criminal offense).

Although the Ninth Circuit is free to overrule its own precedent regarding whether Congress intended a statutory provision to be decided by a judge, rather than a jury, see, e.g., United States v. Buckland, 289 F.3d 558, 564-68 (9th Cir. 2002) (*en banc*) (discussing enhanced penalties under 21 U.S.C. § 841), it has not seen fit to overrule the Supreme Court's decision in Almendarez-Torres. See, e.g., United States v. Weiland, 420 F.3d 1062, 1079 n. 16 (9th Cir. 2005). For these reasons, to the degree the government argues that Covian-Sandoval did not create an additional element of section 1326, the government has pled in the

indictment an allegation that Congress intended to be decided by a judge, rather than a jury.[6] Therefore, pursuant to Federal Rule of Criminal Procedure 7(d), Mr. Loya moves to strike this surplusage from the indictment.

## VIII.

## MOTION TO PRODUCE GRAND JURY TRANSCRIPTS

Mr. Loya hereby moves this Court to compel the government to produce: one, a complete transcript of the January 2008 grand jury impanelment; and two, all grand jury transcripts relating to this case. See U.S. CONST. AMENDS V & VI. Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) allows disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." In this case, there are numerous grounds.

As for the grand jury impanelment, as is indicated above, based on past experience, the grand jurors in this district are not properly instructed on the law. The failure to properly instruct the grand jury is a basis to dismiss an indictment. See Navarro-Vargas, 408 F.3d 1184. Accordingly, the showing has been made to release these transcripts.

As for the need to release the grand jury transcripts regarding this case, the following justify their release. One, as is indicated above, the government has previously dismissed an indictment, with prejudice, that alleged Mr. Loya was deported on April 25, 2002. If the government presented this alleged deportation to the grand jury, then it would implicate collateral estoppel, double jeopardy, due process and the right to a fair trial. Moreover, as is indicated above, the government must present the same deportation to the grand jury that it presents to the petit jury. The release of the grand jury transcripts will ensure that there is not a variance. Finally, the AUSA currently handling this case for the government is not the AUSA who presented

---

[6] The holdings in Covian-Sandoval and Almendarez-Torres also render subsection (b) of section 1326 unconstitutional. In Covian-Sandoval, the Ninth Circuit held that a jury must determine the timing of a person's deportation to trigger subsection (b)'s enhanced statutory maximum. Covian-Sandoval, 462 F.3d 1097-1098. In Almendarez-Torres, however, the Supreme Court held that Congress intended subsection (b) to be a sentencing provision to be determined by a judge. Almendarez-Torres, 523 U.S. at 235. It is thus clear that subsection (b), as written and construed by the Supreme Court, violates Apprendi.

this case to the grand jury. Thus, the only way to really know if the deportation presented at trial is the same that was presented to the grand jury is to release the grand jury transcripts.

**IX.**

**SUPPRESS ALL EVIDENCE SEIZED IN VIOLATION OF THE FOURTH AMENDMENT**

The Fourth Amendment prohibits "unreasonable" searches and seizures. U.S. CONST. amend. IV; Terry v. Ohio, 392 U.S. 1, 20-21 (1968). The test of whether a seizure is reasonable entails a balancing of the governmental interest that justifies the intrusion against the individual's privacy expectations and interests. See Ferguson v. City of Charleston, 532 U.S. 67, 84 n.21 (2001); see also Mich. Dep't of State Police v. Sitz, 496 U.S. 444, 448-49 (1990).

In this case, Mr. Loya's Fourth Amendment rights were violated on two occasions: first, Agent Donnelly lacked reasonable suspicion to seize Mr. Loya; and two, the prolonged detention of Mr. Loya constituted an arrest.

**A. Agent Donnelly Lacked Reasonable Suspicion to Detain Mr. Loya.**

The Fourth Amendment specifically prohibits unreasonable searches and seizures of a vehicle during brief investigatory stops. See United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975). Moreover, an officer may detain a motorist only upon a demonstration of "reasonable suspicion" of criminal activity. See United States v. Cortez, 449 U.S. 411, 417 (1981); see also United States v. Rodriguez, 976 F.2d 592, 594 (9th Cir. 1992), amended 997 F.2d 1306 (9th Cir. 1993). That “reasonable suspicion” must consist of “specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." Rodriguez, 976 F.2d at 594 (citations omitted); see also United States v. Sigmond-Ballesteros, 285 F.3d 1117 (9th Cir. 2002). A "gloss on this rule prohibits reasonable suspicion from being based on broad profiles which cast suspicion on entire categories of people without any individualized suspicion of the particular person to be stopped." Sigmond-Ballesteros, 285 F.3d at 1121 (quoting United States v. Rodriguez-Sanchez, 23 F.3d 1488, 1492 (9th Cir. 1994), (overruled in part on other grounds); see also United States v. Montero-Camargo, 208 F.3d 1122, 1131-32 (9th Cir. 2000); United States v. Garcia-Camacho, 53 F.3d 244, 245-46 (9th Cir. 1995); United States v. Mariscal, 285 F.3d 1127 (9th Cir. 2002).

A determination of whether an officer had "reasonable suspicion" of wrongdoing is "'not readily, or even usefully, reduced to a neat set of legal rules.'" Ornelas v. United States, 517 U.S. 690, 695-96 (1996) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)); see also United States v. Hernandez- Alvarado, 891 F.2d 1414, 1416 (9th Cir. 1989). Rather, in making reasonable-suspicion determinations, the court must consider the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting criminal activity. United States v. Cortez, 449 U.S. 411, 418 (1981); see also United States v. Arvizu, 534 U.S. 266, 266 (2002) (holding that the "totality of the circumstances" inquiry of an investigatory stop of a vehicle must be based on all factors, collectively, and not each in isolation). While this inquiry "includes the 'collective knowledge of the officers involved, and the inferences reached by experienced, trained officers,'" Hall, 974 F.2d at 1204 (other internal quotations omitted), this experience may not be used to give the officers unbridled discretion in making a stop. See Hernandez-Alvarado, 891 F.2d at 1416; see also Florida v. J.L., 529 U.S. 266, 271 (2000) (finding that a tip from an anonymous informant did not give rise to sufficient reasonable suspicion to perform a Terry stop).

In this case, the information and activities on which the arresting agents relied to make the investigatory stop did not give rise to reasonable suspicion. As is noted above, at best, Agent Donnelly detained the occupants of the van because: (1) the driver did not look at him as he drove by; (2) the front seat passenger spoke to someone in the back of the van; and (3) the van parked near the port of entry and the occupants quickly exited. Such reasons do not give rise to requisite level of suspicion needed to detain.

**B. Agent Donnelly Lacked Probable Cause to Arrest Mr. Loya.**

Even if this Court finds that Agent Donnelly had reasonable suspicion to detain Mr. Loya, the Agent's prolonged detention and subsequent transportation of Mr. Loya exceeded the bounds of an investigative stop.[7] Although no "litmus-paper test" exists for "determining when a seizure exceeds the bounds of an investigative stop" see Florida v. Royer, 460 U.S. 491, 506(1983); Eberle v. City of Anaheim, 901 F.2d 814, 819 (9th Cir.1990), this Court must examine the "totality of the circumstances" in deciding "whether an investigative detention has ripened into an arrest." Eberle, 901 F.2d at 819. The Court's inquiry

[7] It is unclear from the discovery the exact timing of events. Accordingly, an evidentiary hearing would be appropriate.

focuses on the perspective of the person seized, rather than the subjective beliefs of the law enforcement officers. Id. "The question is thus whether a reasonable innocent person in [the same] circumstances would not have felt free to leave after brief questioning." Id. (internal quotation marks omitted). Moreover, "the *burden* of showing probable cause to make a warrentless arrest is on the government." Id. When a defendant shows that he was arrested without a warrant, the burden shifts to the government to justify the warrantless arrest. Id. citing United States v. De La Fuente, 548 F.2d 528, 533 (5th Cir. 1977).

In this case, Mr. Loya was the driver of the van. He told Agent Donnelly he was a Untied States citizen and he presented a valid Arizona driver's license. Agent Donnelly allegedly received a message that Mr. Loya's name was connected with another name and that that person had been previously deported. This is not sufficient information, however, to arrest a person. Therefore, Mr. Loya's Fourth Amendment rights were violated.

**C. All Evidence Seized or Derived Pursuant to the Above Fourth Amendment Violations Must be Suppressed.**

Evidence obtained as the result of an illegal arrest must be suppressed as well as any other evidence that is discovered as a direct result of the unlawful activity. See Wong Sun v. United States, 371 U.S. 471, 485 (1963); Brown v. Illinois, 422 U.S. 590 (1975); United States v. Duncan, 570 F.2d 292, 293 (9th Cir. 1978); United States v. Humphries, 600 F.2d 1238 (9th Cir. 1979).

Because Mr. Loya's arrest in this case was illegal, all evidence obtained as a result of that arrest must be suppressed. This includes, but is not limited to, statements made after arrest, fingerprints, officer observations, the circumstances of his arrest, and his presence in the United States.

The government will no doubt contend that suppression of presence in the United States is improper. However, an alien's presence has not only been suppressed before, but the suppression has been affirmed by the Supreme Court. See United States v. Brignoni-Ponce, 422 U.S. 873 (1975).

**X.**

**MOTION TO SUPPRESS STATEMENTS**

During the August 15, 2008 motion hearing, the government indicated that it was not seeking to introduce any post-arrest statements. If the government does decide to seek the admission of statements, Mr. Loya will seek leave to suppress them.

**XI.**

**REQUEST FOR LEAVE TO FILE FURTHER MOTIONS**

Mr. Emiliano-Loya and defense counsel are continuing to receive discovery in this case. Moreover, counsel was not able to see Mr. Loya's A-file until after these motions were filed.[8] As new information surfaces due to the government providing discovery in response to these motions or an order of this Court, defense will find it necessary to file further motions, or to supplement existing motions with additional facts. Specifically, defense counsel anticipates, if necessary (*e.g.*, the government secures a conviction at trial) filing a motion attacking the validity of Mr. Loya's deportation. Therefore, defense counsel requests the opportunity to file further motions based upon information gained from discovery.

**XII.**

**CONCLUSION**

For the reasons stated above, Mr. Loya moves this Court to grant his motions.

Respectfully submitted,

DATED: August 18, 2008

*/s/ John C. Ellis, Jr.*
**JOHN C. ELLIS, JR.**
Federal Defenders of San Diego, Inc.
Attorneys for Juan Diego Emiliano Loya

---

[8] Defense counsel did make attempts to view the A-file prior to the date due for filing these motions. See Exhibits G, H, I and J.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08cr2124-IEG |
| | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| JUAN DIEGO EMILIANO LOYA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Counsel for Defendant certifies that the foregoing pleading, is true and accurate to the best of his information and belief, and that a copy of the foregoing Defendant's Notice of Motions and Motions has been electronically served this day upon:

Douglas Keehn, Assistant United States Attorney
880 Front Street
San Diego, CA 92101

Dated: August 18, 2008

*/s/ John C. Ellis, Jr.*

JOHN C. ELLIS, JR.
Federal Defenders
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467 (tel)
(619) 687-2666 (fax)
E-mail: john_ellis@fd.org