KAREN P. HEWITT
United States Attorney
DOUGLAS KEEHN
Assistant U.S. Attorney
California State Bar No. 233686
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6549
E-mail: douglas.keehn@usdoj.gov

Attorneys for Plaintiff
United States of America

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JUAN DIEGO EMILIANO LOYA,<br>Defendant. | Criminal Case No. 08CR2124-IEG<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>Date: September 3, 2008<br>Time: 9:00 a.m.<br>Honorable: Irma E. Gonzalez |

COMES NOW the plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Douglas Keehn, Assistant United States Attorney, respectfully submits the following Trial Memorandum.

//

//

//

//

//

//

//

//

//

# I

## STATEMENT OF THE CASE

### A. INDICTMENT

On June 25, 2008, an Indictment was returned in the Southern District of California charging Defendant Juan Diego Emiliano Loya, a.k.a. Hector David Quevado, ("Defendant") with being an alien found in the United States after deportation, in violation of 8 U.S.C. § 1326(a) and (b). On August 4, 2008, the Court arraigned Defendant on the Indictment and Defendant pled "not guilty."

### B. TRIAL STATUS

Trial is scheduled for Wednesday, September 3, 2008, at 9:00 a.m. before the Honorable Irma E. Gonzalez. The United States anticipates that its case-in-chief will last one full day.

### C. STATUS OF COUNSEL

Defendant is represented by John C. Ellis, Jr., Esq., Federal Defenders of San Diego, Inc.

### D. CUSTODY STATUS

Defendant is in custody.

### E. INTERPRETER

The United States does not need an interpreter for any of its witnesses. The United States anticipates that Defendant may request an interpreter.

### F. JURY WAIVER

Defendant has not waived trial by jury.

### G. PRETRIAL MOTIONS

On August 1, 2008, Defendant filed motions to compel discovery, preserve evidence and for leave to file further motions. As these motions were untimely, counsel advised the Government that Defendant would seek a continuance at the first motion hearing on August 4, 2008. At that hearing, Defendant requested a trial date. The Court set a motion in limine date of September 2, 2008, and set the case for trial on September 3, 2008. The Government made application for an order shortening time in order to respond Defendant's motions on August 11, 2008. The Court signed the proposed order on August 12, 2008. The Government likewise filed motions for reciprocal

discovery and fingerprint exemplars on August 11, 2008. At a special motion hearing on August 15, 2008, the Court granted the Government's motions for reciprocal discovery and fingerprint exemplars, and directed that defense counsel be permitted to view the A-File in this matter. Defense viewed the A-File on August 19, 2008. Defendant was fingerprinted on August 20, 2008.

**H. <u>STIPULATIONS</u>**

The Government and Defendant have not entered into any stipulations.

**I. <u>DISCOVERY</u>**

The United States has complied with its discovery obligations. Defendant has not provided any reciprocal discovery.

## II

## <u>STATEMENT OF THE FACTS</u>

**A. <u>THE INSTANT OFFENSE</u>**

On June 4, 2008, at approximately 7:45 p.m., Border Patrol Agent (BPA) Michael Donnelly was conducting line watch duties in Andrade, California. BPA Donnelly observed a van pass his location, and noted that the driver was intent, looking forward, while the passenger appeared to be speaking to someone in the cargo area. The vehicle was traveling below the posted speed limit, then slowed further as it approached BPA Donnelly. BPA Donnelly followed the vehicle in an attempt to run a registration check. The vehicle then exited at Andrade Road and continued south toward the Andrade Port of Entry and the international border. About one quarter-mile north of the Port of Entry the van pulled over and the driver, later identified as Defendant Juan Diego Emiliano Loya, and the passenger fled the vehicle. BPA Donnelly activated his lights, identified himself as a federal agent and directed suspects back to the van for an immigration check. Both suspects complied. Defendant claimed he was a United States citizen and provided a purported Arizona identification card in the name of "Juan D-E Loya." This identification came back with multiple aliases and social security numbers. One alias, Hector David Quevado, with the same date of birth as stated on Defendant's Arizona identification, had been previously removed. Moreover, the name Juan Emiliano Loya matched a lengthy criminal history including crimes of violence. BPA Donnelly

further confirmed Defendant's identification by positively comparing Defendant's tattoos to those associated with these names and aliases.

BPA Donnelly took Defendant to Andrade Port of Entry for fingerprint identification but Defendant refused to comply. BPA Donnelly placed Defendant under arrest and advised him of his rights pursuant to Miranda. BPA Donnelly then transported Defendant to Yuma Station for booking and processing. Defendant forcibly resisted fingerprinting. Several Agents were required to assist in obtaining Defendant's fingerprints. After the Agents obtained a couple of Defendant's prints Defendant then permitted the remainder of his prints, and his booking photo, to be taken. Law enforcement databases returned a positive match for Defendant's identity, aliases, and criminal and immigration history. After arrest, Defendant invoked his rights pursuant to Miranda and all questioning ceased.

**B. DEFENDANT'S IMMIGRATION HISTORY**

Defendant is a citizen of Mexico. Defendant has been removed from the United States to Mexico on two occasions: (1) on April 25, 2002, pursuant to a 1996 order of an immigration judge following a deportation hearing; and (2) on October 18, 2006, pursuant to a reinstatement of his 1996 order of removal.

**C. DEFENDANT'S CRIMINAL HISTORY**

On or about May 26, 1989, Defendant sustained a felony conviction for Theft in Arizona and was sentenced to four months in custody. On or about June 6, 1992, Defendant sustained a felony conviction for Larceny in Arizona and was sentenced to three years in prison; Defendant was subsequently sentenced to at least one further year of imprisonment for a violation of parole or probation in this matter (exact date and term uncertain). On or about October 13, 1995, Defendant sustained a felony conviction for Aggravated Assault Against an Officer in New Mexico and was sentenced to a further five years in prison. On or about November 9, 1998, Defendant sustained a felony conviction for Assault in New Mexico and was sentenced to three years and nine months in prison. On or about July 22, 2003, Defendant sustained a conviction for Trespass in Texas and was sentenced to 15 days in custody. On or about January 9, 2004, Defendant sustained a conviction for

Assault Causing Injury in Texas and was sentenced to 120 days in custody. This year, on or abut May 9, 2008, Defendant sustained a conviction for Shoplifting in Arizona and was sentenced to six months in custody. Given Defendant's successful use of aliases and criminal conduct in multiple jurisdictions it appears that he may have sustained other convictions, as well, of which further documentation is pending.

**III**

**PERTINENT LAW**

**A. 8 U.S.C. § 1326 - DEPORTED ALIEN FOUND IN THE UNITED STATES**

The United States must prove beyond a reasonable doubt that:

1. Defendant was deported from the United States;
2. After deportation, Defendant voluntarily entered the United States;
3. When Defendant entered he knew he was entering the United States or after Defendant entered the United States he knew that he was in the United States and knowingly remained;
4. Defendant was found in the United States without having obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States; and
5. Defendant was an alien at the time of his entry into the United States.

Committee on Model Criminal Jury Instructions - Ninth Circuit, Manual of Model Jury Instructions for the Ninth Circuit, §9.5B (West ed. 2003, modified January 2007); United States v. Salazar-Gonzalez, 458 F.3d 851 (9th Cir. 2006).

**B. ALIENAGE**

The Ninth Circuit has clearly established that "deportation documents are admissible to prove alienage under the public records exception to the hearsay rule." See United States v. Hernandez-Herrera, 273 F.3d 1213, 1218 (9th Cir. 2001) (affirming the admission of deportation documents to prove alienage).

The Ninth Circuit has also made clear the type of deportation documents that may be used as evidence of alienage:

> Although neither a deportation order, see United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (citing United States v. Ortiz-Lopez, 24 F.3d 53, 55 (9th Cir. 1994)), nor the defendant's own admissions, see United States v. Hernandez, 105 F.3d 1330, 1332 (9th Cir. 1997), standing alone, will support the conclusion that a defendant is an alien, here the government offered Ramirez-Cortez's prior **deportation order**, **admissions** Ramirez-Cortez **made in his underlying deportation proceeding**, and the testimony of an INS agent that his review of Ramirez-Cortez's immigration records reflected that Ramirez-Cortez was an alien. Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that Ramirez-Cortez was an alien. Cf. United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (finding sufficient evidence of alienage where the government's evidence consisted of a prior **deportation order**, the defendant's admissions to an INS agent that he was a Mexican citizen, and his **admissions during the deportation hearing** that he was not a United States citizen); United States v. Contreras, 63 F.3d 852, 858 (9th Cir. 1995) (holding that sufficient evidence supported the conviction when the government introduced a prior **deportation order**, the **deportation hearing transcript**, which indicated that the defendant admitted his Mexican citizenship under oath, and testimony of an INS agent that the defendant was a Mexican citizen).

United States v. Ramirez-Cortez, 213 F.3d 1149, 1158 (9th Cir. 2000) (emphases added).

The Ninth Circuit has affirmed the admission of orders to show cause, see Sotelo, 109 F.3d at 1449, admissions made during deportation hearings, see Id., and transcripts, see Contreras, 63 F.3d at 858. In Sotelo, the Ninth Circuit described a list of evidence that was admitted at trial which supported a defendant's § 1326 conviction:

> The prosecution also presented several documents from the prior deportation proceeding. During the **deportation hearing**, Sotelo admitted, through his lawyer, allegations in the order to show cause that he is not a citizen or national of the United States and he is a native and citizen of Mexico. The prosecution presented the **order to show cause** and an **advisement of rights form**, which Sotelo signed. The advisement of rights form stated that Sotelo admitted he was in the United States illegally. Finally, the prosecution presented the order of deportation and the warrant of deportation, evidencing Sotelo's actual deportation.

109 F.3d at 1449 (emphasis added).

**C. PHYSICAL REMOVAL**

The Ninth Circuit has held that deportation "refers to the removal from the country of aliens who are physically present in the United States." United States v. Romo-Romo, 246 F.3d 1272, 1275-76 (9th Cir. 2001); see also United States v. Luna-Madellaga, 315 F.3d 1224, 1227 (9th Cir.

2003) ("Section 1326 speaks only of 'removal.'" . . . "It plainly turns on the alien's physical removal -- not the order of removal."). As a result, the United States need only prove beyond a reasonable doubt that Defendant physically left the country sometime between the time he was ordered deported and the time he was found in the United States. See United States v. Bahena-Cardenas, 411 F.3d 1067, 1074-75 (9th Cir. 2005) (citation omitted). A warrant of deportation may be sufficient evidence of physical removal. Id.

**D. EXPRESS CONSENT**

The Ninth Circuit has stated what is required for permission to reapply:

> The INS has promulgated regulations that govern the process by which the Attorney General will "[c]onsent to [a deported alien] reapply[ing] for admission[.]" 8 C.F.R. § 212.2. These regulations include the requirement that a deported alien must have remained out-side of the United States for a minimum of five consecutive years. Id. § 212.2(a). Pina-Jaime did not meet this requirement. Nor did he submit the required form I-212 to the INS to obtain consent of the Attorney General to reapply for admission. See United States v. Sanchez-Milam, 305 F.3d 310, 312-13 (5th Cir. 2002), cert. denied, 537 U.S. 1139, 154 L. Ed. 2d 834, 123 S. Ct. 932 (2003). Accordingly, the Attorney General did not "expressly consent[] to [Pina-Jaime's] reapplying for admission" as required by the statute. See 8 U.S.C. § 1326(a)(2).

United States v. Pina-Jaime, 332 F.3d 609, 611-12 (9th Cir. 2003). There is no evidence supporting that Defendant has done so.

As a result, *any* cross-examination regarding the lack of permission is irrelevant. In United States v. Rodriguez-Rodriguez, 393 F.3d 849, 856 (9th Cir. 2005), the defendant sought to elicit testimony on cross-examination from a witness for the United States regarding the following claims: (1) INS computers are not fully interactive with other federal agencies' computers; (2) over 2 million documents filed by immigrants have been lost or forgotten; (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States; and (4) the custodian never checked with the other federal agencies to inquire about documents relating to the defendant. Judge Lorenz sustained objections to this line of cross-examination finding that it was irrelevant. Id. The Ninth Circuit agreed stating that "[n]one of that information is relevant on the facts of this case, because it is uncontested that [the defendant] never made any application to the INS or any other federal agency." Id.

As in Rodriguez, Defendant has not presented any evidence that he had applied for reentry. As in Rodriguez, any cross-examination upon witnesses for the United States regarding the types of checks performed to show the lack of an application for reentry would be irrelevant.

There is a second reason this type of cross-examination is irrelevant. The Ninth Circuit's model jury instruction requires the United States to prove the defendant's lack of permission to re-enter the United States beyond a reasonable doubt. Ninth Circuit Manual of Model Jury Instructions – Criminal § 9.5; see United States v. Rivera-Relle, 333 F.3d 914, 919 (9th Cir. 2003); United States v. Mateo-Mendez, 215 F.3d 1039 (9th Cir. 2000). However, unlike a true "element," lack of permission to re-enter is more like an affirmative *defense*. The Fifth Circuit has stated,

> [I]t is unclear whether Attorney General consent is even an element of 8 U.S.C. § 1326 or only an affirmative defense. The "unless" language would seem to indicate that it is an exception and is therefore more in the nature of a defense which the defendant must establish.

United States v. Terrazas-Carrasco, 861 F.2d 93, 96 (5th Cir. 1988). The Supreme Court has never ruled on this question, but in United States v. Mendoza-Lopez, 481 U.S. 828, 830-31 (1987), the Court called the "consent" clause an "exception" to the statute. The Court described section 1326 as providing the following:

> "Any alien who–
> "(1) has been arrested and deported or excluded and deported, and thereafter
> "(2) enters, attempts to enter, or is at any time found in the United States ...
> "shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both."

Id. at 830-31. In a footnote, the Supreme Court added that the "consent" clause was an "exception" to the statute:

> The statute excepts those aliens who have either received the express consent of the Attorney General to reapply for admission or who otherwise establish that they were not required to obtain such consent. 8 U.S.C. § 1326(2)(A), (B).

Mendoza-Lopez, 481 U.S. at 831, n.2. The Court was not presented with the issue of whether the "consent" clause is an element or an affirmative defense. However, the language suggests that it should more properly be treated as a defense, and not as an element at all. See United States v. Gravenmeir, 121 F.3d 526, 528 (9th Cir. 1997) (holding, in prosecution for possession of a machine

gun, that "the exceptions contained in part (2) of the subsection establish affirmative defenses to the defined offense."). The United States contends, with this supporting authority, that Congress intended it to be an affirmative defense; above all, a defendant is in a much better position than the United States to know whether he has sought or obtained permission to re-enter the United States. Thus, unless Defendant intends to assert an affirmative defense that he reapplied, this type of cross-examination about the search performed for permission to enter is not relevant.

**E. LAWFULNESS OF PRIOR DEPORTATION**

Since physical removal is all that is required, the lawfulness of a defendant's prior deportation is not an element of the offense under § 1326 and should not be presented to the jury. See United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996) (en banc). The United States need only prove that a deportation proceeding actually occurred and that the defendant was consequently deported. United States v. Medina, 236 F.3d 1028, 1031 (9th Cir. 2001).

A deportation order or warrant is sufficient to establish the prior deportation. Id.; see also United States v. Bejar-Matrecios, 618 F.2d 81 (9th Cir. 1980) (holding a warrant of deportation is admissible as a Public Record, pursuant to F.R.E. 803(8)). A tape recording or transcript of the prior deportation is not required to prove the prior deportation. Medina, 236 F.3d at 1030-31.

Furthermore, although a defendant charged pursuant to § 1326 can preclude the United States from relying on a prior deportation in which the proceedings were so procedurally flawed that it "effectively eliminated the right of the alien to obtain judicial review," the mere absence of a tape recording or transcript of the deportation proceeding does not establish that the deportation was "fundamentally unfair." See id. at 1031-32 (citations omitted). Finally, because a defendant must also prove prejudice as a result of a flawed deportation proceeding, a vague assertion that he might be able to locate some defect in the proceeding if a tape recording was available is "no more than speculation to support his assertion of prejudice," and insufficient to meet his burden. Id. at 1032 (quoting United States v. Corrales-Beltran, 192 F.3d 1311, 1318-19 (9th Cir. 1999)).

//

//

**F. PRIOR CONVICTION**

A prior felony conviction is not an element of § 1326(a) and should not be presented to the jury. See United States v. Alviso, 152 F.3d 1195, 1199 (9th Cir. 1998) (citing Almendarez-Torres v. United States, 523 U.S. 224, 244 (1998)). The Supreme Court has recently indicated that the Ninth Circuit's reasoning in Almendarez-Torres may have been incorrectly decided. See Apprendi v. New Jersey, 530 U.S. 466, 489-90 (2000); United States v. Nordby, 225 F.3d 1053, 1057 n.1 (9th Cir. 2000). The holding in Almendarez-Torres remains controlling law, however, until expressly overruled by the Supreme Court. See United States v. Pacheco-Zepeda, 234 F.3d 411, 414 (9th Cir. 2000), cert. denied, 532 U.S. 966 (2001).

**G. DUPLICATES**

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) under circumstances, it would be unfair to admit the duplicate instead of the original. See Fed. R. Evid. 1003.

**IV**

**WITNESSES**

The Government reserves the right to add, omit, substitute or change the order of witnesses. Presently, the Government intends to call the following witnesses during its case-in-chief:

1. Border Patrol Agent Michael Donnelly
2. Border Patrol Agent John Cirillo
3. Border Patrol Agent Ray Chavez
4. Border Patrol Agent Tony Martinez
5. Border Patrol Agent Jose Beltran
6. Border Patrol Agent Brent Baker
7. Border Patrol Agent Aaron Garcia
8. Border Patrol Agent Chris Cantua
9. Immigration Enforcement Agent Omar Alvarado
10. Immigration Enforcement Agent Roberto Sanchez

11. Border Patrol Agent Joseph Wong
12. Mr. David Eliot Beers, former Special Agent, FBI

V

**EXHIBIT LIST**

The Government will provide a final exhibit list on the morning of trial. Presently, the Government intends to offer into evidence the following:

1. Order of the Immigration Judge dated September 26, 1996
2. Warrant of Removal/Deportation (Form I-205) dated May 17, 2006, executed October 18, 2006
3. Warrant of Removal/Deportation (Form I-205) dated April 23, 2002, executed April 25, 2002
4. Certificate of Non-Existence
5. Fingerprint Card dated June 4, 2008
6. Fingerprint Card dated May 17, 2006
7. Fingerprint Card dated April 6, 1988
8. Mexican Birth Certificate for Hector David Quevedo
9. I.N.S. Application for Status (Forms I-687 and I-693) dated April 6, 1988
10. Consent to Forward Application to Immigration Service dated July 21, 1988
11. I.N.S. Notice of Termination dated August 19, 1991
12. Tape of Deportation Proceedings dated September 26, 1996
13. Purported Arizona State Identification Card in the name of Juan D-E Loya
14. Aerial Map of Apprehension Location

VI

**OTHER LEGAL ISSUES**

All outstanding legal issues will be addressed at the motions in limine hearing scheduled for September 2, 2008.

//

## VII

## PROPOSED VOIR DIRE

1. Of those of you who have sat on criminal juries, did any of those juries fail to reach a unanimous verdict?
2. Has anyone had an unpleasant experience with any law enforcement personnel?
3. Has anyone had any disputes with any agency of the United States Government?
4. Does anyone have relatives or close friends who have been investigated, arrested, accused or charged with a crime?
5. Does anyone have relatives or close friends who have been deported or removed?
6. Does anyone have strong feelings about the United States Border Patrol or any other federal agency involved in immigration issues?
7. Does anyone believe that immigration laws are too harsh?
8. Does anyone believe everyone should be allowed to enter the United States?
9. Does anyone believe that it should be legal to enter the United States without authorization?
10. Does everyone understand that as a juror your duty is to apply the law regardless of whether you disagree with it?
11. Does everyone understand that the laws of the United States equally apply to everyone who enters the United States?
12. Does everyone understand that as a juror you are not to consider prejudice, pity or sympathy in deciding whether the Defendant is guilty or not guilty?
13. Does anyone think that, regardless of the strength of the evidence, they will have trouble deciding whether the Defendant is guilty or not guilty?
14. Does anyone think they cannot decide whether a person is guilty or not guilty?
15. Does anyone have religious or moral beliefs which will make it difficult for them to make a decision strictly based on the law and facts of this case?

16. Will anyone have difficulty evaluating the testimony of law enforcement witnesses even where you are not permitted to view their law enforcement reports directly?

## VIII

## JURY INSTRUCTIONS

The United States will submit proposed jury instructions under separate cover. The United States reserves the right to submit additional instructions at the Fed. R. Crim. P. 30 conference.

DATED: August 25, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ ***Douglas Keehn***
DOUGLAS KEEHN
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN DIEGO EMILIANO LOYA,<br><br>Defendant. | Criminal Case No. 08CR2124-IEG<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, DOUGLAS KEEHN, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S TRIAL MEMORANDUM** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. John C. Ellis, Jr., Esq.

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 25, 2008.

/s/ ***Douglas Keehn***
DOUGLAS KEEHN
Assistant U.S. Attorney