KAREN P. HEWITT
United States Attorney
DOUGLAS KEEHN
Assistant U.S. Attorney
California Bar. No. 233686
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6549
Email: douglas.keehn@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN DIEGO EMILIANO LOYA,<br><br>Defendant(s). | Criminal Case No. 08CR2124-IEG<br><br>DATE: September 2, 2008<br>TIME: 2:00 p.m.<br>COURTROOM: 1<br>Before Honorable Irma E. Gonzalez<br><br>UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO:<br>(1) DISMISS ON COLLATERAL ESTOPPEL;<br>(2) DISMISS FOR FAILURE TO STATE OFFENSE;<br>(3) DISMISS FOR VIOLATION OF RIGHT OF PRESENTMENT;<br>(4) DISMISS FOR GRAND JURY MISINSTRUCTION;<br>(5) DISMISS FOR RACIALLY MOTIVATED INVESTIGATION;<br>(6) STRIKE SURPLUSAGE FROM INDICTMENT;<br>(7) PRODUCE GRAND JURY TRANSCRIPTS;<br>(8) SUPPRESS EVIDENCE SEIZED IN VIOLATION OF FOURTH AMENDMENT;<br>(9) SUPPRESS STATEMENTS; AND<br>(10) LEAVE TO FILE FURTHER MOTIONS;<br><br>TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Douglas Keehn, Assistant U.S. Attorney, and hereby files its Response In Opposition to Defendant's Motions in the above-captioned case. Said motions are based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

DATED: August 25, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ Douglas Keehn
DOUGLAS KEEHN
Assistant United States Attorney

KAREN P. HEWITT
United States Attorney
DOUGLAS KEEHN
Assistant U.S. Attorney
California Bar. No. 233686
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6549
Email: douglas.keehn@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN DIEGO EMILIANO LOYA,<br><br>Defendant(s). | Criminal Case No. 08CR2124-IEG<br><br>DATE: September 2, 2008<br>TIME: 2:00 p.m.<br>COURTROOM: 1<br>Before Honorable Irma E. Gonzalez<br><br>UNITED STATES' STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

**I**

**<u>STATEMENT OF THE CASE AND FACTS</u>**

The United States hereby incorporates by reference the statement of the case and statement of facts set forth in its Motions *In Limine* filed August 15, 2008.

**II**

**<u>DEFENDANT'S MOTIONS</u>**

**A. <u>DEFENDANT'S ESTOPPEL ARGUMENT IS FATALLY PREMISED UPON FALSE STATEMENTS OF MATERIAL FACT, AND IS UNSUPPORTED BY GOVERNING LAW</u>**

Defendant argues that because he was previously charged with being found in the United States in violation of law, and that matter was dismissed before trial at the Government's motion,

his current prosecution is collaterally estopped. [Def's Memorandum at 2-5.] Defendant's motion omits and misrepresents material facts in his possession, facts which moot his claim of collateral estoppel. Likewise, Defendant states that the issue of his alienage was preclusively "litigated" and "decided," without legal support as it applies to the facts he alleges. These omissions and misrepresentations of material fact and law obfuscate the conclusion, as a matter of both fact and law, that Defendant's motion is without merit.

**1. Defendant Omits and Misrepresents Material Facts In His Possession in Arguing That His Presence In the United States Has Been Ongoing**

The evidence in this matter, and in Defendant's possession, indicates that he was deported the day immediately following dismissal of his prior indictment, and that he is thus currently in the United States as a result of having re-entered at some later time. His presence in the United States has not been ongoing since his last prosecution, and that element is not estopped.

Although he confuses the elements of "alienage" and "presence," Defendant crucially premises his argument on the assertion that "the charge of being found in the United States is a continuing offense" and the concomitant representation that "although the [G]overnment has provided defense counsel with evidence of the April 25, 2002 deportation, it has not provided evidence of a subsequent deportation." [Def's Memorandum at 4.] Relying upon these premises, Defendant proceeds to argue that because he was prosecuted in New Mexico in 2006 for a "found in" violation of 8 U.S.C. § 1326 [Def's Memorandum at 3-4, Def's Exhibit B], and that that matter was dismissed with prejudice at the Government's motion, before trial, on October 17, 2006 [Def's Memorandum at at 4, Exhibit F], Defendant's presence in the United States has thus been ongoing and the element of presence is therefore "similar and material" to that element in the current offense. [Id.]

In truth, Defendant is in possession of evidence of his deportation on the day immediately after the dismissal of his prior indictment, on October 18, 2006. [See Exhibit A.] Exhibit A, attached, is a Department of Homeland Security I-205 Warrant of Removal/Deportation, marked

in the lower right-hand corner as discovery pages 168 and 169. The second page of the Warrant bears Defendant's name, photograph and fingerprint, and states that he was witnessed leaving the United States on October 18, 2006, afoot, from a United States Port of Entry, as verified by two immigration agents.

In addition to any recollection he has of this event, Defendant came into possession of this evidence again when this document was received by his attorney at Federal Defenders of San Diego, Inc., through the Government's routine delivery of discovery in this matter. [See Exhibit B.] Exhibit B is a Receipt for Discovery Materials and Acknowledgment of Conditions for Retention and Use, documenting that Federal Defenders received discovery pages 133 through 174, including pages 168 and 169, on July 14, 2008. This was a full month before Defendant filed his motion with the Court, representing otherwise, claiming that the United States had not provided evidence of his deportation subsequent to the previous dismissal, in order to argue that his former presence in the United States was "similar and material" to that element in the current prosecution. [Def's Memorandum at 4.]

Defendant's statement is a falsehood. Evidence in Defendant's possession shows that he was deported the day immediately following dismissal of his prior indictment, and that he is now in the United States as a result of having re-entered at a later time. His presence in the United States has not been ongoing since his last prosecution and that element was not estopped by prosecution prior to October 18, 2006.

**2. The Issue of Defendant's Alienage Was Neither Litigated Nor Decided**

Defendant contends that the issue of his alienage was "previously litigated" and "previously decided," and is thus precluded from prosecution in this matter. [Def's Memorandum at 4-5.] Although Defendant refers generally to the Ninth Circuit's recent and authoritative application of estoppel doctrine to immigration prosecution in United States v. Castillo-Basa, 483 F.890 (9th Cir. 2007), he is unable to apply the court's analysis to either of these claims.

In Castillo-Basa the defendant was tried, and acquitted by jury, of illegal re-entry into the United States, then subsequently convicted for perjuring himself at trial. Castillo-Basa, 483 F.3d at 894-95. The issue on appeal was whether the defendant's perjury conviction violated Constitutional protection from double jeopardy (referred to interchangeably in the court's analysis as collateral estoppel). Id. at 896-98. In determining whether the issue in question had been "previously litigated," the court framed this portion of its analysis chiefly in what the trial had not been (e.g., "a full and fair opportunity to litigate the issue"), and what, if any, significance that held. Id. at 898. This entire discussion occurred upon the uncontested premise that the issue had been tried, that is, presented to and decided by a jury. Id. Defendant fails to connect any part of the court's reasoning to his proposition that a prior court's having granted a Government motion to dismiss a § 1326 indictment before trial somehow holds the same preclusive effect in the matter at hand.

Likewise, Defendant fails to support his argument that the issue of alienage was "previously decided." The court in Castillo-Basa again framed its entire analysis of this question within the record of the first jury trial. Id. at 898-89. The court stated that "[i]t is completely clear from the record, however, that the question... was 'necessarily decided' in [Castillo-Basa's] illegal reentry trial, and that he is therefore entitled to prevail with regard to the third step." Id. at 898 (emphasis added). The court further reasoned that, "[t]he jury having so determined, collateral estoppel bars the prosecution of Castillo-Basa at a second trial[.]" Id. at 898-89 (emphasis added). Again, Defendant makes absolutely no effort to connect any part of the court's reasoning to the incongruous proposition that a prior court's having granted a Government motion to wholly dismiss a § 1326 indictment before trial holds the same preclusive effect with regard to a later, separate, prosecution.

Because Defendant's estoppel argument is critically premised upon untrue statements of material fact, and he is unable to support his argument in the governing authority on the matter, his motion for dismissal should be denied.

**B. THE INDICTMENT PROPERLY TRACKS THE STATUTE AND SUFFICIENTLY INFORMS DEFENDANT OF THE CHARGES AGAINST HIM**

Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Rule 7(c)(3) states that an error in the indictment is not a ground for dismissal if it "did not mislead the defendant to the defendant's prejudice." Rule 7(c) was intended to introduce "a simple form of indictment." Advisory Committee Notes to Subdivision (c), Fed. R. Crim. P. 7 (2002). The Ninth Circuit has held that an indictment is generally appropriate if it sets forth the offense in the words of the statute itself. United States v. Musacchio, 968 F.2d 782, 787 (9th Cir. 1991) (indictment that tracks the statute itself is generally sufficient); United States v. Johnson, 804 F.2d 1078, 1084 (9th Cir. 1986). In fact, an indictment which tracks a statute's language is presumptively valid as drafted. Musacchio, 968 F.2d at 787.

In Musacchio, this Court reasoned that in judging the sufficiency of the indictment, a court must determine whether the indictment adequately alleges the elements of the crime and whether the defendant was fairly informed of the charges against him, so the defendant can defend himself against the charge and be protected against a subsequent prosecution for the same act. Id.; United States v. Jenkins, 785 F.2d 1387, 1392 (9th Cir. 1986), United States v. Buckley, 689 F.2d 893, 897 (9th Cir. 1982). The Government was required to state only the essential facts necessary to inform Musacchio of the crime charged. Musacchio, 968 F.2d at 787; United States v. Markee, 425 F.2d 1043, 1047-48 (9th Cir. 1970). With respect to violation of 8 U.S.C. § 1326, an indictment that alleges that the defendant is a deported alien, subsequently found in the United States without permission, suffices. United States v. Jackson, 72 F.3d 1370, 1380 (9th Cir. 1995).

In this case, the Indictment charging Defendant with attempted entry after deportation properly tracked the statutory language of 8 U.S.C. §1326 and sufficiently informs him of charges. The Indictment states:

> On or about June 4, 2008, within the Southern District of California, defendant JUAN DIEGO EMILIANO LOYA T/N, aka Hector David Quevedo, an

> alien, who previously had been excluded, deported and removed from the United States to Mexico, was found in the United States, without the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security (Title 6, United States Code, Sections 202(3) and (4), and 557), having expressly consented to the Defendant's reapplication for admission into the United States; in violation of Title 8, United States Code, Section 1326(a) and (b).
>
> It is further alleged that defendant JUAN DIEGO EMILIANO LOYA T/N, aka Hector David Quevedo, was removed from the United States subsequent to November 9, 1998.

The Indictment clearly places Defendant on notice of the crime charged against him and allows him to adequately defend himself against the charge.

Consistent with the thrust of Rule 7, there generally are no "magic words" required in indictments, and defendants are not entitled to have a charge reflect the wording of their choice so long as, at minimum, they are given notice of the elements. "[T]he test of sufficiency of the indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." United States v. Hinton, 222 F.3d 664, 672 (9th Cir. 2000); see also Davis v. United States, 347 F.2d 378, 379 (10th Cir. 1965) (there is no "magic" way of alleging *mens rea*); Hagner, 285 U.S. at 431 (courts should not ask "whether it [the indictment] could have been made more definite and certain, but whether it contains the elements of the offense"). An indictment that sets forth the charged offense in the words of the statute itself is generally sufficient. United States v. Johnson, 804 F.2d 1078, 1084 (9th Cir. 1986). Here, the Indictment sufficiently tracks the language of the statute. The indictment is sufficient and Defendant's motion should be denied.

## C. THE INDICTMENT DOES NOT VIOLATE DEFENDANT'S FIFTH AMENDMENT RIGHT TO PRESENTMENT

Defendant argues that the Indictment violates his rights under the Fifth Amendment's Presentment Clause. Defendant claims that: (1) there is no indication that the grand jury "found probable cause that [Defendant] was deported... as opposed to simply being physically removed from the United States"; and (2) that the Government "may at trial rely on a deportation that was

never presented to, or considered by, the grand jury." [Def's Memorandum at 6.] Defendant's arguments lack merit.

The Court should reject Defendant's speculation regarding the adequacy of the instructions to the grand jury regarding legal terms such as "removal" or "deportation." The Supreme Court has held that the Fifth Amendment protection from trial for a crime not presented to a grand jury is triggered by "only a defect so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment." Midland Asphalt Corp. v. United States, 489 U.S. 794, 802 (1989). If a grand jury returns an indictment when there is insufficient evidence to indict, the greatest safeguard is the petit jury and the rules governing its determination of guilt. United States v. Sears, Roebuck & Co., 719 F.2d 1386, 1392 n.7 (9th Cir. 1983). An accused's only cognizable interest in grand jury proceedings—and thus the only interest that courts can vindicate by dismissing an indictment on constitutional grounds—is the right to have a legally constituted grand jury make an informed and independent evaluation of the evidence to determine if there is probable cause to believe the accused guilty of a crime. Id. (citing United States v. Wright, 667 F.2d 793, 796 (9th Cir. 1982) (assuming erroneous grand jury instructions but still refusing to dismiss indictment)). A defendant must show that the prosecutor's conduct was "so flagrant" that it deceived the grand jury in a significant way, thereby infringing on its ability to exercise independent judgement. Wright, 667 F.2d at 796.

In United States v. Kenny, 645 F.2d 1323 (9th Cir. 1981), the Ninth Circuit rejected the defendant's request to dismiss the indictment on the basis of his allegation that the grand jury returned the indictment without any instruction on the applicable law. The Court stated that it was "not persuaded that the Constitution imposes the additional requirement that grand jurors receive legal instructions" and warned that "the giving of such instructions portends protracted review of their adequacy and correctness." Id. at 1347.

In this case, Defendant clearly seeks to accomplish precisely what Kenny feared. Namely, he wishes for this Court to review the adequacy and correctness of any instruction to the grand

jury. But even if there was evidence – rather than merely Defendant's speculation – that the grand jury was not instructed on an element of the offense, that would not be sufficient grounds to compel the dismissal of the indictment. United States v. Larrazolo, 869 F.2d 1354, 1359 (9th Cir. 1989), overruled on other grounds by Midland Asphalt, 489 U.S. at 799-800. More importantly, Defendant does not and cannot credibly allege that the Government attempted to mislead the grand jury in this case. Furthermore, there is no basis to suppose that the grand jury was impaired in its ability to independently evaluate the evidence. Because Defendant has nothing but pure speculation to support his assertion that his rights under the Presentment Clause were violated, the Court should deny his motion.

## D. ALLEGATION OF GRAND JURY MISINSTRUCTION IS BASELESS

Defendant requests dismissal of the Indictment based solely, and admittedly, upon his conjecture that the January 2008 grand jury impanelment proceedings were flawed. Defendant states his basis for conjecture is rooted in unstated allegations raised with regard to a prior grand jury impanelment.[1/] Defendant provides no support whatsoever for this motion with regard to the January 2008 grand jury and his motion should be denied.

## E. THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS DUE TO AN ALLEGED "RACIALLY MOTIVATED INVESTIGATION"

Defendant claims that Agent Donnelly initiated an investigation based on race and thus violated the Constitution. [Def's Memorandum at 9.] While there is no Ninth Circuit precedent directly on point, the law of the Sixth and Eighth Circuits indicates that Defendants' argument fails both legally and factually. Defendant is required to demonstrate by a preponderance of the evidence that government agents approached Defendant based solely on Defendant's race.

---

[1/] It bears noting that the Hon. John A. Houston and the Hon. Barry Ted Moskowitz both previously issued a detailed Order analyzing and rejecting all of the arguments originally raised with regard to the prior grand jury, arguments which Defendant assumes in predicate. The United States will likely concur with those courts' reasoning insofar as Defendant ever articulates analogous objections.

Defendant offers no such demonstration, even on the basis of the facts he represents. The Court should therefore decline to hold an evidentiary hearing and should deny Defendants' motion to dismiss the indictment based on an alleged racially-motivated investigation.

The Constitution prohibits the selective enforcement of law based on consideration of race and "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause ...." United States v. Frazier, 408 F.3d 1102, 1108 (8th Cir. 2005) (citing Johnson v. Crooks, 326 F.3d 995, 999 (8th Cir. 2003) (quoting Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996))). In Frazier, the Eighth Circuit recognized that encounters with officers may violate the Equal Protection Clause when initiated upon the sole basis of racial considerations. Frazier, 408 F.3d at 1108; United States v. Avery, 137 F.3d 343, 353 (6th Cir. 1997); see also United States v. Woods, 213 F.3d 1021, 1022-23 (8th Cir. 2000); United States v. Nichols, 512 F.3d 789, 795 (6th Cir. 2007). In order for Defendant to prevail on an Equal Protection claim, he is required to prove "the existence of purposeful discrimination." McCleskey v. Kemp, 481 U.S. 279, 292 (1987) (internal quotations omitted). More specifically, a defendant must "prove that the decisionmakers in his [or her] case acted with discriminatory purpose." Id.; see also Avery, 137 F.3d at 355. Defendant has the burden of demonstrating by a preponderance of the evidence that the police officer or government agent decided to approach him solely because of his race. United States v. Travis, 62 F.3d 170, 174 (6th Cir. 1995). Only after Defendant so establishes a *prima facie* case is the government then required to "articulate a race-neutral reason for its action, or identify a compelling governmental interest in the race-based [action]." Avery, 137 F.3d at 356. The use of race in the pre-contact stage of an investigation does not give rise to any constitutional protections. Travis, 62 F.3d at 174 (relying on United States v. Brignoni-Ponce, 422 U.S. 873 (1975)). "Consequently, when officers compile several reasons before initiating an interview, as long as some of those reasons are legitimate, there is no Equal Protection violation." Travis, 62 F.3d at 174 (citing Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274 (1977)).

Here, as detailed in Agent Donnelly's narrative account (attached completely as Exhibit C), and in facts proffered by Defendant himself, Agent Donnelly had several reasons for initiating an interview with Defendant completely independent of Defendant's race. First, Agent Donnelly observed Defendant's suspicious demeanor, inconsistent in Agent Donnelly's experience with that of the general public, and more consistent with that of someone attempting to evade notice. [Exhibit C.] Second, Agent Donnelly observed a passenger looking into the cargo area of the vehicle and behaving as though communicating with a person in that location. Id. Third, Defendant was driving the vehicle below the posted speed limit and then slowed further upon coming into view of the Border Patrol Agent. Id. Agent Donnelly then followed the vehicle in an effort to gather further information on the vehicle's registration. Id. As Agent Donnelly did this, Defendant exited the Interstate in a maneuver also consistent in Agent Donnelly's experience with that of a person eluding law enforcement. Id. When Defendant found himself within a quarter mile of a Port of Entry ahead, he abruptly parked the vehicle and fled, as did his passenger. Id. It was at this point that Agent Donnelly, already having noted suspicious behavior consistent with that of someone evading law enforcement, directed both occupants to return to the vehicle for officer safety and immigration checks. Id.

Defendant, the driver, provided an Arizona identification card by way of identification, not a driver's license. Id. Agent Donnelly then discovered that Defendant's purported name was associated with multiple aliases and social security numbers, including one "David Quevedo" who had been previously deported. Id. The sum of these facts indicate that Defendant, in addition to his suspicious behavior prior to contact, had lied about both his name and citizenship during the immigration check. Consistent with these observations, Defendant refused to provide fingerprint data for further immigration investigation. Id.

Based on these facts, Defendant somehow posits that "there is little doubt that Agent Donnelly's investigation was based on race." [Def's Memorandum at 9.] This, in spite of the fact that Agent Donnelly not only noted multiple bases for lawful investigation, but moreover that none

of these bases involved Defendant's race. Defendant's conclusory claim of violation of what is indeed a very serious constitutional protection does not approximate the preponderance of evidence required for a *prima facie* Equal Protection claim based on race.[2/] As such, the Court should decline to hold an evidentiary hearing and should deny Defendants' motion to dismiss the indictment based on the alleged racially motivated investigation.

**F. THE INDICTMENT DOES NOT CONTAIN SURPLUSAGE**

Defendant argues that any portion of the Indictment that does not strictly recite the elements of § 1326 should be stricken as surplusage. Although Defendant fails to cite Rule 7(d) of the *Federal Rules of Criminal Procedure*, Defendant wishes the Court to strike the Government's allegation that Defendant was removed subsequent to November 9, 1998. The Court should decline Defendant's request.

"The purpose of a motion to strike under Fed.R.Crim.P. 7(d) is to protect a defendant against 'prejudicial or inflammatory allegations that are neither relevant nor material to the charges.'" United States v. Terrigno, 838 F.2d 371, 373 (9th Cir. 1988) (quoting United States v. Ramirez, 710 F.2d 535, 544-55 (7th Cir. 1983)). However, even if facts contained in an indictments allegations are prejudicial, they should not be stricken if they are material and relevant to the charges. Id.

The date of Defendant's removal is material and relevant to the charge under § 1326. Although the Government need not take the position that Covian-Sandoval engrafted a new element onto § 1326, the date of Defendant's deportation in relation to his prior conviction is relevant for sentencing purposes. Defendant's own pleadings maintain that Covian-Sandoval requires the Government to prove that he was removed subsequent to a conviction in order to

---

[2/] Defendant relies on United States v. Cuevas-Ceja, 58 F. Supp.2d 1175 (D. Or. 1999) for the proposition that an equal protection violation in the initiation of an investigation is fatal to the indictment. However, Defendant omits that the district court in Cuevas-Ceja found that there were several reasons justifying the bus interdiction program initiated by law enforcement, and held that the investigation did not violate the Fourth Amendment. Id. at 1185.

trigger the enhanced statutory maximum contained in § 1326. [Def's Memorandum at 10-11.] As such, proof that Defendant was deported subsequent to November 9, 1998 (the date of his conviction for felony assault), is the "functional equivalent" of an element under § 1326. See United States v. Minore, 292 F.3d 1109, 1116-17 (9th Cir. 2002); United States v. Buckland, 289 F.3d 558, 564-68 (9th Cir. 2002) (en banc). Therefore, the date must be submitted to the jury.[3/] Furthermore, the allegation is neither prejudicial nor inflammatory. As such, Defendant's request to strike the allegation should be denied.

**G. THE MOTION TO PRODUCE GRAND JURY TRANSCRIPTS SHOULD BE DENIED**

Defendant seeks production of the grand jury transcripts yet fails to support his motion with anything approximating the requisite need to invade the sanctity of the grand jury's deliberations. As such, his motion should be denied.

The need for grand jury secrecy remains paramount unless the defendant can show "a particularized need" that outweighs the policy of grand jury secrecy. United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986); United States v. Murray, 751 F.2d 1528, 1533 (9th Cir. 1985). Defendant has not suggested any ground on which proceedings before the grand jury would warrant dismissal of the indictment. It is well settled that the grand jury may indict someone based on inadmissible evidence or evidence obtained in violation of the rights of the accused. See United States v. Mandujano, 425 U.S. 564 (1976) (indictment brought based on evidence obtained in violation of defendant's right against self-incrimination); United States v. Calandra, 414 U.S. 338, 343 (1974); United States v. Blue, 384 U.S. 251 (1966) (indictment brought based on evidence obtained in violation of defendant's right against self-incrimination) ; Lawn v. United States, 355 U.S. 339 (1958); Costello v. United States, 350 U.S. 359, 363 (1956) ("neither the Fifth

---

[3/] This does not imply that United States v. Almendarez-Torres, 523 U.S. 224 (1998), has been overruled, for, at minimum, the fact of Defendant's conviction will remain for the Court to determine.

Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act"); see also Reyes v. United States, 417 F.2d 916, 919 (9th Cir. 1969); Johnson v. United States, 404 F.2d 1069 (9th Cir. 1968); Wood v. United States, 405 F.2d 423 (9th Cir. 1968); Huerta v. United States, 322 F.2d 1 (9th Cir. 1963).

The Ninth Circuit has recognized the grand jury's unique history, secrecy, and role. See United States v. Navarro-Vargas, 408 F.3d 1184, 1188-1201 (9th Cir. 2005). Tracing the history of the grand jury from English common law, the U.S. Supreme Court has observed that grand jurors were not hampered by technical or evidentiary laws, and traditionally could return indictments based not on evidence presented to them at all, but on their own knowledge of the facts. See Costello, 350 U.S. at 363. In light of this tradition, the Court held that "neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act," and that grand jury indictments could not be challenged based on the insufficiency or incompetence of the evidence. Id. Rather, "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." Id. at 409.

There is no basis upon which to dismiss the Indictment. Indeed, Defendant does not and cannot identify a single untoward thing that might have occurred before the grand jury which could possibly warrant dismissal. As such, his request for transcripts should be denied.

## H. DEFENDANT'S SUPPRESSION MOTIONS ARE INSUFFICIENT AND SHOULD BE DENIED WITHOUT AN EVIDENTIARY HEARING

The Court can and should deny Defendant's motions to suppress evidence, without an evidentiary hearing, because Defendant's motions fail to provide a sworn declaration in support, fail to allege a specific factual dispute which warrants the relief sought, and are moot beyond these insufficiencies for failure to identify suppressible evidence.

//

//

**1. Defendant Fails To Provide A Sworn Declaration**

Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1g(1) (stating that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s). . . . The Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition.").

Here, Defendant has failed to support his allegations with a declaration, in clear violation of Criminal Local Rule 47.1(g), making it unnecessary to hold an evidentiary hearing.

**2. Defendant Fails To Allege a Specific Factual Dispute**

An evidentiary hearing is required if a defendant's motion to suppress and supporting declarations or affidavits allege a specific, detailed and nonconjectural dispute of material fact. See United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986) (an evidentiary hearing is required "if the moving papers are definite, specific, detailed and nonconjectural to enable the court to conclude that contested issues of [material] fact . . . are at issue"). However, where a defendant fails to provide a specific factual dispute of any material fact, the Court is likewise not required to hold an evidentiary hearing. See United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (finding that the motion to suppress was "akin to boilerplate motions that lay no factual foundation" and that the unsworn representations of counsel were "too indefinite and conjectural to require the government to respond"); United States v. Howell, 231 F.3d 616, 620-23 (9th Cir.

2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."); United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (District Court is not required to hold an evidentiary hearing where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer"); United States v. Feola, 651 F. Supp. 1068, 1119 (S.D. N.Y. 1987), aff'd without decision, 875 F.2d 857 (2d Cir. 1989) (denying motion for Miranda hearing to determine admissibility of confession where there was "no real allegation of [] police coercion").

Here, Defendant, without disputing the facts alleged in the probable cause declaration and Agent's narrative (attached completely as Exhibit C), argues that because he believes such facts are insufficient to support his detention and arrest, his detention and arrest are thus somehow invalid as a matter of law. This is not the requisite standard. Defendant is required to show, with the appropriate declarations in support, that a specific, detailed and nonconjectural contest of material fact exists such that the court can determine whether a Fourth Amendment violation has occurred. Instead Defendant has submitted the type of unsworn representations and boilerplate accusations of impropriety that are insufficient to warrant an expenditure of judicial resources in the form of an evidentiary hearing.

**3. Defendant's Motions are Moot for Failure to State Suppressible Evidence**

Even where an illegal detention or arrest has occurred, a motion to suppress evidence of a status offense, such as unlawful presence in the United States, is moot. US v. Orozco-Rico, 589 F.2d 433, 435-36 (9th Cir. 1978) (holding that where Defendant was unable to allege tainted evidence relevant to the immigration offense charged, no relief was possible even if allegations of an illegal detention or arrest had been valid). That is, there is no sanction to be applied even when an arrest proved illegal leads simply to the discovery of a defendant's identity. Hoonsilapa v. INS, 575 F.2d 735, 738 (9th Cir. 1978); US v. Cella 568 F.2d 1266, 1285-87 (9th Cir. 1977).

Here, Defendant demands suppression of "all evidence" relating to his detention or arrest, but fails to identify suppressible evidence of this crime that is actually tainted by illegal search or seizure. [Def's Memorandum at 13-16.] Defendant does not allege that government agents, for example, failed to advise Defendant of his Miranda rights, that the Miranda rights provided were somehow defective, or most significantly, that any incriminating post-Miranda statements were even made. Rather, Defendant acknowledges that no post-arrest statements have been proffered against him, and yet somehow seeks to suppress them in the subjunctive. [Def's Memorandum at 16.] That motion lacks foundation for relief. Defendant also demands that his fingerprints and evidence of his presence in the United States be suppressed. [Def's Memorandum at 13-15.] These arguments are also legally and factually ill-advised. Even assuming *arguendo* that Defendant's arrest was unlawful, as a matter of law that finding alone is still insufficient to "suppress the body," his fingerprints, or governmental records proving Defendant guilty of this particular crime. For these reasons Defendant's suppression motions are moot beyond even their insufficiency, and should be denied without evidentiary hearing.

For the reasons stated above, the Court should deny Defendant's motions to suppress evidence.

## I. LEAVE TO FILE FURTHER MOTIONS

Notwithstanding the redundancy of Defendant's final motion, the United States does not object to the granting of leave to file further motions, as long as the order applies equally to both parties and the additional motions are based on newly discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

//

//

//

//

**IV**

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that, except where unopposed, Defendant's Motions be denied.

DATED: August 25, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ Douglas Keehn
DOUGLAS KEEHN
Assistant United States Attorney

## INDEX OF EXHIBITS

United States v. Juan Diego Emiliano Loya

Case No. 08CR2124-IEG


Item ... Page

I-205 Warrant of Removal/Deportation (Exhibit A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Receipt for Discovery Materials and Acknowledgment of Conditions for Retention and Use (Exhibit B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Agent Donnelly's Apprehension Narrative (Exhibit C) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

# EXHIBIT A

**U.S. Department of Justice**

Immigration and Naturalization Service

# Warrant of Removal/Deportation

[redacted]

File No: A092 438 393

Date: MAY 17, 2006

## To any officer of the United States Immigration and Naturalization Service:

Juan EMILIANO-LOYA,
(Full name of alien)

who entered the United States at NOGALAS, ARIZONA on April 27,2002
(Place of entry) (Date of entry)

is subject to removal/deportation from the United States, based upon a final order by:

- ☐ an immigration judge in exclusion, deportation, or removal proceedings
- ☒ a district director or a district director's designated official
- ☐ the Board of Immigration Appeals
- ☐ a United States District or Magistrate Court Judge

and pursuant to the following provisions of the Immigration and Nationality Act:
241(a)(5) of the Immigration and Nationality Act.

I, the undersigned officer of the United States, by virtue of the power and authority vested in the Attorney General under the laws of the United States and by his or her direction, command you to take into custody and remove from the United States the above-named alien, pursuant to law, at the expense of:
Salaries and Expenses, Department of Homeland Security 2006.

(Signature of INS official)

ACTING PATROL AGENT IN CHARGE
(Title of INS official)

OCTOBER 18 2006 DEMING, NM.
(Date and office location)

168

To be completed by Service officer executing the warrant:
Name of alien being removed:

**Juan EMILIANO-LOYA**

Port, date, and manner of removal: POE / PDN A foot 10/18/2006



Photograph of alien removed



Right index fingerprint of alien removed

(Signature of alien being fingerprinted)

SPA P. Miller
(Signature and title of INS official taking print)

Departure witnessed by: ______________________
(Signature and title of INS official)

If actual departure is not witnessed, fully identify source or means of verification of departure:

If self-removal (self-deportation), pursuant to 8 CFR 241.7, check here. ☐

Departure Verified by: SANCHEZ, R (I.E.A)
(Signature and title of INS official)

169

# EXHIBIT B

ORIGINAL

DATE: July 14, 2008 TO: John Ellis ( ) 234-8467
NUMBER OF PAGES: 42
NUMBERING SEQUENCE: 133-174 FROM: Alessandra P. Serano (619) 557-7084
NUMBER OF TAPES: ______ Assistant U.S. Attorney
TOTAL COST @ $.10/PAGE: ______ DATE BILLED FOR FIRST 250 PAGES ______
**MAKE CHECKS PAYABLE TO: U.S. DEPARTMENT OF JUSTICE**

**RECEIPT FOR DISCOVERY MATERIALS AND ACKNOWLEDGMENT OF CONDITIONS FOR RETENTION AND USE** (Rev. 11/7/06)

**United States v. Juan Diego Emiliano-Loya, 08CR2124IEG**

I am the attorney of record for **Juan Diego Emiliano-Loya** . On behalf of my client, I have requested the opportunity to inspect, copy, and/or photograph all documents and objects described in Rule 16 of the Federal Rules of Criminal Procedure, including reports of examinations and tests (16(a)(1)(F)) and written summaries of any testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial (16(a)(1)(G)). I am accepting receipt of the documents and objects broadly described above in lieu of personally inspecting, copying, and/or photographing all documents and objects described in Rule 16 that are in the government's possession, custody, or control. My client reserves the right to inspect, copy, and/or photograph the originals of any of these documents and objects. Note: **The Government hereby informs you that these documents and objects are available for such purposes.**

I further acknowledge and agree to comply with the Government's request herein to inspect, copy, and/or photograph all documents and objects described in Rule 16, including reports of examinations and tests (16(b)(1)(B)) and written summaries of any testimony that my client intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial (16(b)(1)(C)). To the extent I or my client has obtained, or does obtain, possession, custody, or control of any such documents and objects, I will notify the Government immediately and make them available for inspection, copying, and/or photographing.

**Note: The Government hereby requests notice of any intention of your client to rely on an entrapment defense, or a defense involving mental condition or duress.**

To the extent the documents and objects broadly described above include witness statements, as defined in Rule 26.2, that the Government is providing to my client prior to the witness's testimony, I acknowledge and agree that the Government is doing so on the condition that my client reciprocate and provide to the Government immediately any such statements as they become available.

To the extent the documents and objects broadly described above include grand jury transcripts and/or marked grand jury exhibits, I acknowledge that these grand jury materials are being produced pursuant to Court Order and that I am accepting them under the conditions established in the Court Order.

RECEIVED
JUL 14 2008
FEDERAL DEFENDERS

DATE: ______________ ______________
ATTORNEY FOR

Person Contacted: Regular pickup
Date: 07/14/08 Time: ______
Secretary's Initials: cm

**FEDERAL DEFENDERS ONLY:**

I acknowledge receipt of ______ pages of discovery and agree to pay the sum of $______ for copying charges when billed by the U.S. Attorney's Office.

# EXHIBIT C

U.S. Department of Homeland Security

Continuation Page for Form I213

| Alien's Name | File Number | Date |
|---|---|---|
| QUEVEDO, Hector David | A092438393<br>Event No: [redacted] | 06/05/2008 |

NARRATIVE:

On June 4, 2008, at approximately 1940 hours, while assigned to line watch duties in Andrade, California, I was observing traffic on Interstate 8 east of Andrade Rd. Near this time I observed a van pass my location traveling westbound. As the vehicle passed my location, I could see the driver staring forward with both hands on the steering wheel, in an attempt to avoid being noticed. From my experience this type of behavior is not consistent with that of the general public. The general public seems to show a level of curiosity when they see a marked law enforcement vehicle or personnel. During this time the passenger was looking into the cargo area of the van as if speaking with someone in the back.

I could see that the vehicle was traveling under the posted limit and as it passed my location. The van then applied the brakes and slowed further as he noticed my presence. I entered the Interstate in order to catch up to the van, to attempt to run registration checks. As I closed the distance on the van, it exited the Interstate at Andrade Rd. in what appeared in an attempt to elude me. The van traveled south towards the Andrade, California Port of Entry. Once I was near enough to view the Arizona license plate the vehicle was approximately .25 miles north of the International Boundary. The vehicle then rapidly parked on the west edge of the road. At this time the driver and passenger rapidly exited...(CONTINUED ON NEXT PAGE)

| Signature | Title |
|---|---|
| MICHAEL DONNELLY | BORDER PATROL AGENT |



Form I-831 Continuation Page (Rev. 08/01/07)

U.S. Department of Homeland Security | Continuation Page for Form I213

| Alien's Name | File Number | Date |
|---|---|---|
| QUEVEDO, Hector David | A092438393<br>Event No: [redacted] | 06/05/2008 |

the vehicle. At this point I activated my overhead lights due to vehicle traffic on the roadway for traffic safety. I identified myself as a Border Patrol Agent and I ordered both occupants to get back into the vehicle for officer safety and to conduct immigration checks. Both subjects complied and returned to the vehicle. As I approached the passenger side of the vehicle, I could see that there was a third individual in the back of the van looking out through the curtain. I asked each of the occupants if they were United States citizens and the driver told me, yes. The driver was the only one who answered my question. I asked for identification on the three occupants and they provided me with Arizona identification cards.

Through the identification I determined the front passenger to be Sabastian Campos Jr (DOB 05/31/1976) and the rear passenger to be Anna Christine Miranda (DOB 11/12/1969), both United States citizens. The driver provided me with an Arizona Identification Card number D02264130 under the name of Juan D-E Loya (DOB 10/18/1970). I ran Want/Warrants and Immigration History checks and KAX 850 (Yuma Sector Communications) informed me that he returned with multiple aliases and social security numbers. One of the aliases was that of Hector David Quevedo with the same DOB of 10/18/1970. Radio informed me that QUEVEDO was previously removed from the United States. One of the removals was under the name of Juan Emiliano-Loya. Also, Radio informed me that QUEVEDO had a lengthy criminal history, which included assault on an officer. I further confirmed QUEVEDO's identity by comparing his tattoos with that of his criminal history.

I contacted SBPA Chavez (Y22) and asked him to come to my location. I gave SBPA Chavez the information that I had and he suggested that we attempt to identify him further by running him through IDENT at the Andrade, California POE. I explained to QUEVEDO that I was going to take him to the POE and enter his fingerprints to confirm his identity.

At the POE, QUEVEDO refused to comply with my request to identify him through fingerprinting. I informed QUEVEDO that he was under arrest and read him his Miranda Warning. I contacted SBPA Chavez and he arrived at the POE. SBPA Chavez informed me to take QUEVEDO to the Yuma Border Patrol Station to confirm his identity.

At the Yuma Border Patrol Processing Area, I met with SBPA Cirillo (Y73) and informed him of the situation. SBPA Cirillo and I spoke with FOS Martinez (Y8) and we confirmed that we had probable cause to believe that QUEVEDO was illegally in the United States. SBPA Cirillo and I met with QUEVEDO and explained to him that we had probable cause to take his fingerprints. Again QUEVEDO refused to submit to fingerprinting. We removed his restraints and I positioned myself on QUEVEDO's left side and maintained control over his left arm. SBPA Cirillo maintained control over his right arm. QUEVEDO was clenching his fists together and resisting our control over his arms to prevent us from taking fingerprints. During this time QUEVEDO began to escalate from passive resistance to aggressive resistance by pushing his shoulder against me. SBPA Cirillo was able to manipulate QUEVEDO's body and arm into a position to prevent further resistance and BPA Beltran (Y415) was able to open his hand and capture his fingerprints. After we took a couple of prints QUEVEDO relaxed his body and we were able to successfully take his fingerprints and photograph.

QUEVEDO's, biographical information, fingerprints, and photo were submitted into the ENFORCE/IDENT/IAFIS databases. His information was identified and returned with a positive match lookout for the above criminal and immigration history.

I again read QUEVEDO Advisement of Rights, as per form I-214. QUEVEDO understood and signed that he understood his rights. QUEVEDO refused to speak with me regarding his immigration and... (CONTINUED ON NEXT PAGE)

| Signature | Title |
|---|---|
| [signature] Y494<br>MICHAEL DONNELLY | BORDER PATROL AGENT |



Form I-831 Continuation Page (Rev. 08/01/07)

U.S. Department of Homeland Security | Continuation Page for Form I213

| Alien's Name | File Number | Date |
|---|---|---|
| QUEVEDO, Hector David | A092438393<br>Event No: [redacted] | 06/05/2008 |

criminal history. This was witnessed by BPA Ruiz (Y310). Because he invoked his right to a lawyer all questioning was stopped.

I again read QUEVEDO his Advisement of Rights via form I-214 on 6/5/2008 at 0100 hours which was witnessed by BPA Ruiz Y310.

Hector David Quevedo is being prosecuted for: 8 USC 1326 Re-entry of Removed Aliens, 8 USC 1325 Illegal entry, and is being presented for 8 USC 1182 Removal Proceedings.

| Signature | Title |
|---|---|
| MICHAEL DONNELLY | BORDER PATROL AGENT |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JUAN DIEGO EMILIANO LOYA,<br>Defendant(s). | Case No. 08CR2124-IEG<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, DOUGLAS KEEHN, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

John C. Ellis, Esq.
Federal Defenders of San Diego, Inc.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 25, 2008.

s/ Douglas Keehn
DOUGLAS KEEHN